**Rufus Lee AVERHART, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 02S00–8808–PC–751.**

Supreme Court of Indiana.

May 27, 1993.

Susan K. Carpenter, Public Defender, Rhonda Long–Sharp, Valerie K. Boots, Deputy Public Defenders, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee.

## PER CURIAM.

Appellant and two codefendants were charged with Murder and Felony Murder. A trial by jury resulted in a finding of guilty. The codefendants received prison sentences and appellant received the death penalty. The conviction was appealed and affirmed by this Court in *Averhart, et al. v. State* (1984), Ind., 470 N.E.2d 666.

In September of 1985, appellant, by counsel, filed a petition for post-conviction relief and a motion for change of judge. Striking resulted in the choosing of the Honorable Vern E. Sheldon as judge to try the post-conviction relief petition. After a long series of amendments and legal maneuvering, the cause came to trial and resulted in a denial of appellant's petition. This is an appeal from that denial.

The facts are: On August 11, 1981, at approximately noon, three men robbed the Gary National Bank in Gary, Indiana. The police were informed that a robbery was in progress, and Police Officer George Yaros responded to the call. He was killed in an exchange of gunfire with the robbers as they exited the bank.

One of the robbers wore a blue suit. All three robbers opened fire and Yaros fell to the ground. The man wearing the blue suit walked back, kicked Officer Yaros's gun away from him, and then fired another shot into the officer. The three robbers left in a two-tone blue sedan. A high-speed chase ensued during which the robber's car stopped, and the man in the blue suit exited the car and discarded an afro wig he was wearing. The pursuing officer then momentarily lost view of him. However, workers at a construction site nearby informed the officer which way the man had gone and also that they had seen the man place a pistol, a bag, and his jacket in some bushes.

The officer soon caught sight of appellant and identified him by his clothing. Appellant was arrested and the revolver and other discarded items were recovered from the bushes. A security officer also recovered a .44 magnum pistol from behind a supermarket along the route of the robber's escape. A witness testified that this

was the .44 magnum pistol that he had sold to appellant. Ballistics tests indicated that this gun had fired the shot which killed Officer Yaros.

In the original record there are 309 photographs taken by the bank security camera which were introduced in evidence. From an examination of these exhibits, it becomes apparent that the three robbers readily can be identified. The photographs show that only one of the robbers was wearing a suit and only one had an afro hair style. It also is apparent that all three robbers were wearing gloves. The last series of photographs, which were taken within seconds of Officer Yaros's death, show the same three robbers exiting the bank, with only one of them wearing a suit and an afro hairdo.

Many of the issues, which appellant attempted to raise during his post-conviction relief hearing and presented on appeal to this Court, were decided by this Court at the time of the original appeal. However, in addition to arguing the merits of those issues, appellant cites many of them as evidence that his trial counsel and his appellate counsel were inadequate.

## I.

■ Appellant claims that error occurred at trial when the victim's wife was permitted to testify on behalf of the State and that the error was compounded when the State was permitted to introduce a photograph of the victim with his granddaughter. The fact that this was going to occur was alluded to by the prosecutor during the *voir dire* examination of the jurors. This was done without objection. This matter was covered in the original appeal. *Id.* at 685.

However, appellant now claims that but for the inadequacy of trial counsel this error would not have occurred. Appellant takes the position that he established that the State's motive in so proceeding was improper in that he introduced an affidavit signed by a deputy prosecuting attorney, who aided in the trial, to the effect that the State placed the victim's widow on the witness stand and the photograph in evidence for the purpose of obtaining sympathy from the jury for the victim. This affidavit was made after the decision of the Court in the original appeal that the action of the State in this regard was not reversible error.

■ At the post-conviction relief hearing, the State objected to the affidavit on the ground of work-product privilege and the post-conviction court sustained the objection. Delving into the inner workings of the prosecuting attorney's office at the time of preparation for trial would of course be invading the work-product privilege. This can be done only where there is fraud involved. *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

This Court has previously held that "[evidence about the victim's family] has no relation to the guilt or innocence of the accused or to the punishment to be administered to him, and is ordinarily calculated only to prejudice the defendant with the jury." *Rowe v. State* (1968), 250 Ind. 547, 550, 237 N.E.2d 576, 577–78.

However, as pointed out above, this issue was raised and was decided against appellant at the trial level and on his original appeal to this Court. We do not perceive that the opinion of one of the deputy prosecuting attorneys concerning the State's reason for using the victim's widow as a witness or introducing the photograph of the victim with his granddaughter in any way changes the situation.

Even if we would assume for the sake of argument that the original trial court erred in permitting the victim's wife to testify and in permitting the photograph of the victim and his granddaughter in evidence, we cannot say, given the present status of this case, that this issue either rises to the status of fundamental error or that it demonstrates that trial counsel failed to render adequate service to appellant at the guilt phase.

Although appellant attempts to argue that he was not properly identified either as participating in the robbery or as the triggerman, these contentions are almost ludicrous in the face of the overwhelming

evidence presented to the jury in this case. The 309 photographs taken by the bank security camera gave the jury the opportunity to look at the perpetrators and identify appellant as one of them beyond any reasonable doubt.

The photographs also show that appellant is the only one wearing an afro hair style and a suit. The testimony of eyewitnesses was that the man wearing the suit returned to the fallen officer, kicked his gun aside, and fired another shot into his prostrate body. Appellant was pursued and captured wearing the same suit. The gun, which ballistics showed to be the murder weapon, was found discarded along appellant's path of flight.

When there is such an abundance of evidence pointing unerringly to the guilt of appellant, this Court cannot justify a reversal on a ground which could have had very little if any bearing upon the jury's decision. *See Osborne v. State* (1978), 268 Ind. 392, 375 N.E.2d 1094.

## II.

■ Appellant claims he is entitled to a new trial because the State suppressed exculpatory evidence. Following the apprehension of appellant and his accomplices, the police conducted gunshot residue tests on each of them. The results of the tests were inconclusive; thus, they were set aside as not being viable evidence. Appellant takes the position that because the prosecuting attorney did not advise him of the results of the tests, the State was guilty of suppressing exculpatory evidence. It cannot be said that the inconclusive tests are exculpatory of appellant and his accomplices. This is especially true when one examines the photographs, including the photographs taken a few seconds before the victim was shot, in which it is apparent that each of the robbers was wearing gloves at the time of the robbery. Under those circumstances, the State was entitled to presume that the gunshot residue tests were of no value.

From the evidence in this case, including the photographs taken by the bank security camera, the jury was entitled to find that the defendants were in fact the robbers, that each of the robbers fired shots, and that each of them was wearing gloves at the time. In light of the State's vicarious liability theory, we hold no reversible error occurred at the guilt phase by the State's withholding of that information. We reserve our ruling with respect to the sentencing phase for later in this opinion.

## III.

Appellant contends the trial court erred in considering a prior conviction that was vacated after the trial concluded and after the death penalty had been imposed. There is no need to address this issue in light of our remand order.

## IV.

■ Appellant claims the post-conviction relief court erred in permitting the State to violate an order of separation of witnesses during the post-conviction hearing. Although the court had entered an order of separation of witnesses, the State was permitted to have appellant's trial counsel remain seated at counsel table during the entire hearing. It has long been the standing practice in this State, upon separation of witnesses, that each party has a right to have one person in the courtroom to aid counsel. *Abercrombie v. State* (1985), Ind., 478 N.E.2d 1236.

In the case at bar, appellant was directly attacking his trial counsel in his post-conviction relief petition. It is obvious that counsel would be the person designated by the State to remain in the courtroom to aid in the presentation of the State's evidence. The post-conviction court did not err in permitting appellant's trial counsel to remain at the State's table during the entire proceeding.

## V.

■ Appellant contends he is entitled to a new trial because he received ineffective assistance of counsel in violation of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To attempt to support his claim, appellant has

cited a myriad of incidents of second-guessing as to why he feels he was not adequately represented in his original trial, some of which have been stated above. Counsel in this case was faced with an exceedingly difficult task in attempting to present a defense. The identification of the three perpetrators of the robbery and of appellant as one of them is overwhelming. Defense counsel was an attorney of considerable experience in defending criminal cases, including capital cases.

The trial record in this case consists of nearly three thousand pages. When viewed overall, it becomes apparent that appellant's counsel defended him properly at the guilt stage. In a case of such magnitude, it is virtually impossible for counsel to have operated perfectly in every respect. This reality was recognized by the United States Supreme Court in *Strickland.* It has been held repeatedly that a defendant is not entitled to a perfect trial, but is entitled to a fair trial, free of errors so egregious that they, in all probability, caused the conviction. *See Brewer v. State* (1986), Ind., 496 N.E.2d 371, *cert. denied,* 480 U.S. 940, 107 S.Ct. 1591, 94 L.Ed.2d 780.

We also would observe in passing that an examination reveals the trial court's judgment in rendering appellant's sentence is thorough and quite well-prepared. The same is true of the findings of fact, conclusions of law, and judgment rendered by the post-conviction court judge. In each instance, the statutes of Indiana and the Constitutions of the United States and of Indiana were scrupulously adhered to, and appellant was afforded every judicial consideration required by law.

Likewise, the Public Defender of Indiana, at the post-conviction hearing and on this appeal, meticulously combed the record in this case and has presented every conceivable issue under which appellant might have been afforded relief. Notwithstanding the competency and hard work of the trial, appellate, and post-conviction counsel, the evidence of guilt in this case is so overwhelming that it is unrealistic to expect the relief prayed for under this section of appellant's brief.

## VI.

■ Appellant also contends he received ineffective assistance of counsel at the jury and judge sentencing phases of the trial. With respect to this ground, the post-conviction court made the following findings:

That, as disclosed at the post-conviction relief proceedings, there were a number of witnesses who might have testified during the penalty phase of the trial concerning Petitioner's upbringing, his family, his education, his artistic talent, and other life activities.

That the names of such witnesses were not disclosed to Petitioner's trial trial counsel by either the Petitioner or Petitioner's mother, Orlena (sic) Averhart.

\* \* \* \* \* \*

That it was the impression of Petitioner's trial counsel that the evidence against Petitioner was "overwhelming" at both the trial and penalty phases, and that he had done everything that could be done for Petitioner.

Post–Conviction Record at 1233. The post-conviction court concluded:

Petitioner was not denied effective assistance of counsel because Petitioner's trial counsel failed to present any mitigating evidence during the penalty phase of the trial.

The decision of Petitioner's trial counsel with respect to mitigating evidence was supported by reasonable, professional judgment, and thus, met the standards....

*Id.* at 1246.

In *Strickland* the Supreme Court articulated a two-part inquiry into a defendant's claim that his conviction or death sentence should be reversed because defense counsel's assistance was ineffective. The Court stated that, for purposes of describing counsel's duties, Florida's capital sentencing proceeding is sufficiently like a trial in its adversarial format and in the existence of standards for decision that it need not be distinguished from an ordinary trial.

*Strickland,* 466 U.S. at 686–87, 104 S.Ct. at 2064. As Indiana's capital sentencing phase is similar in format to that of Florida, we do not distinguish here between counsel's duties at trial and during the penalty phase. *See Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Bellmore v. State* (1992), Ind., 602 N.E.2d 111. This Court adopted the *Strickland* test in *Lawrence v. State* (1984), Ind., 464 N.E.2d 1291.

■ Under the applicable two-step analysis, the burden is on the defendant to show that his trial counsel's performance was deficient at the sentencing phase. The performance inquiry must be whether counsel's assistance was objectively reasonable considering all the circumstances. The second step focuses on a required showing of actual prejudice to the defendant. The defendant must affirmatively prove that "there is a reasonable probability, that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

In reviewing the judgment reached by the trial court finding against appellant on this ground, we accord the trial court with the sole authority to judge the weight of the evidence and the credibility of witnesses and will reverse only if the evidence is undisputed and leads inevitably to a conclusion opposite to that reached by the trial court. *Eliacin v. State* (1978), 269 Ind. 305, 380 N.E.2d 548, 550.

We see reversible error here. No evidence at all of mitigating circumstances was presented by the defense at the sentencing hearing before the jury. The jury recommended the death penalty. No evidence of mitigating circumstances was presented by the defense at the sentencing hearing before the sentencing trial judge; appellant and his mother were the sole witnesses at that sentencing hearing.

At the sentencing hearing before the judge who presided over the trial, proof of appellant Averhart's capacity to intentionally kill was right there on the bench in the trial evidence. What was not there on the bench was the product of an investigation by defense counsel into the defendant's background for the purpose of generating and presenting legitimate evidence of mitigating circumstances to the judge. The job of defense counsel at this final sentencing stage is profoundly important: it is to continue being an adversary to the prosecution and to challenge the conscience of the judge.

In preparation for the penalty phase of the trial, defense counsel familiarized himself with the statutory menu of mitigating circumstances, then spoke with Averhart and his mother. It was decided that both would testify at the time of the judge sentencing hearing. Defense counsel testified at the post-conviction hearing that he did not make any investigation of other possible witnesses. He did not discuss with Averhart or his mother what they might testify to before the judge. Counsel put on what he termed a "free form" sentencing hearing. He basically asked the mother two questions: whether she had anything she would like to say to the court; and, once she answered, he asked, "Anything else?" He then put Averhart on the stand. He established that Averhart wanted to make comments to the court and then told his client to "go ahead." Counsel prepared no questions to guide their disclosures. According to the findings below, defense counsel, confronted with overwhelming evidence of guilt, capitulated. He naively relied upon the system for generating presentence reports to produce his mitigating evidence, and then relied upon the capacity of the trial judge to discern the right result. In effect, counsel threw his client on the mercy of the court. While defense counsel's efforts might be effective representation at an ordinary felony sentencing hearing, it cannot possibly pass muster at the type of capital sentencing hearing mandated by the legislature in the death sentence statute. *Blake v. Kemp,* 758 F.2d 523, 533 (11th Cir.1985).

At the post-conviction hearing, evidence of appellant's extreme disadvantage, as well as his worthy habits and accomplish-

ments was presented. The proven existence and availability of this body of proof commands the conclusion that trial counsel's performance in preparing for and conducting his client's case at the sentencing was deficient, and that the probability that his client would have received a lesser sentence but for this deficiency is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. On this basis, the judgment of the trial court denying post-conviction relief must be reversed and the case remanded to grant post-conviction relief in the form of a new death sentence hearing before the judge.

▇▇▇ While we have determined in section II, above, that the failure of the State to disclose the results of the gun shot residue tests of appellant and his accomplices, or the data sheets made in conjunction with them, does not warrant a new trial on the charges in light of the vicarious liability theory upon which the case was based, the impact of this failure upon the sentencing phase of the trial before the jury is otherwise. With respect to this ground, the post-conviction court concluded:

> Petitioner was not unconstitutionally denied his right to effective assistance of counsel and a fair trial at any phase of the trial due to the State's unlawful and prejudicial suppression of alleged exculpatory and impeaching evidence, to-wit: the results of gunshot residue tests prior to trial as alleged in Paragraph (r) of Petitioner's Amended Petition.

Post–Conviction Record at 1241. The prosecution did not inform defense counsel, in response to a specific request for the results of scientific tests, that it had received a written report of a gunshot residue test reporting that no particles of gunshot residue were found on the disks which had been daubed on appellant's hands. Appellant alone received the death sentence by the judge. That sentence, in turn, is based upon the factual conclusion reached by the jury at its sentencing hearing that it was appellant, and not one of his two accomplices, who returned to the fallen officer and fired the fatal shot into him. That was not a necessary conclusion for the jury to reach in returning the verdicts of guilty, but it was at the sentencing hearing. The report, while inconclusive in the sense that the negative results do not alone support a conclusion that appellant did not fire a gun during the robbery, nevertheless satisfies the materiality standard at a capital punishment hearing. An item is material for this purpose if the failure to release it to defense counsel undermines confidence in the jury's recommendation. *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481, 494 (1985). Here, Exhibit 7, the gloves connected with appellant, had holes over the knuckles the size of a dime and a hole over the back of the hand the size of a golf ball. There was expert evidence at the post-conviction hearing that the holes could have admitted residue. The absence of gunshot residue on the disks forms part of a chain of circumstantial evidence pointing away from appellant as the triggerman. Confidence in the manner in which the jury evaluated the aggravating circumstances with respect to appellant cannot be maintained in this atmosphere. On this basis, the judgment of the post-conviction court is also reversed and a new jury sentencing hearing ordered.

## VII.

Appellant also claims his case should have been severed from his codefendants for the penalty phase. We see nothing in this case to justify such a position. There is nothing in this record to indicate the presence of the codefendants in any manner jeopardized appellant's position.

## VIII.

▇▇▇ Appellant alleges his appellate counsel in his original appeal was ineffective and claims he demonstrated a lack of ability to "present errors of fundamental magnitude not reserved in the motion to correct error." Here, as in the case of the trial counsel, appellant engages in a lot of second-guessing as to what his counsel might have done in preparing appellant's appeal.

However, an examination of this record shows that appellate counsel raised twenty-three separate errors for this Court to determine in the original appeal. This Court's opinion was in excess of twenty-three pages and covers most of the issues which appellant now attempts to raise in this appeal. There is no indication that appellant received ineffective assistance from counsel on his original appeal.

## IX.

Appellant contends the post-conviction court made numerous errors during the course of the post-conviction proceeding. Because these errors may implicate the determination of guilt as well as of sentence, we consider them all. Through interrogatories, appellant requested information concerning the State's decision on bringing charges against appellant and its conduct before the grand jury. He claims the post-conviction court erred in not ordering this type of discovery.

He also claims the post-conviction court should have ordered the State to furnish appellant with complete copies of all police reports. Appellant also contends his conviction and sentence of death were tainted by racial bias from the time of his arrest to the day the sentence was imposed. However, we find nothing whatsoever in this record to support such a claim. Appellant claims the court's rulings in this regard prevented him from demonstrating the racial bias.

■ Appellant called Jackie Reuter as a witness. Reuter served on the jury that convicted appellant. The State objected on the ground that the jury's verdict cannot be impeached. The post-conviction court sustained the objection and refused to allow Reuter to testify. In support of his position, appellant cites *Tanner v. United States*, 483 U.S. 107, 107 S.Ct. 2739, 97 L.Ed.2d 90 (1987), for the proposition that a juror should be allowed to testify as to reasons for the verdict despite the rule against juror impeachment of verdicts.

However, the *Tanner* exception is for prejudicial information improperly brought to the jury's attention or for outside influences brought to bear upon the jury. Appellant states that Reuter would have testified that her reasons for voting to impose the death penalty were because appellant was singled out at trial as the person who shot the police officer from a distance of one and a half feet and because no mitigating evidence was presented in his behalf.

This testimony certainly did not come within the *Tanner* exception and in fact would have added nothing to the evidence otherwise before the court. We see no reversible error in refusing to allow Reuter to testify.

Appellant also contends the court erred in permitting the State a continuance to pursue discovery. There is no merit whatsoever to this contention.

■ Appellant called two expert witnesses and attempted to have them testify as to the statistically significant results of a study that showed a death-qualified jury to be more likely to convict than a non-death-qualified jury and also to have them testify that, in their opinion, appellant's trial counsel did not demonstrate proper skills in attempting to defend appellant. In his findings of fact in this case, the post-conviction court stated:

That neither of said experts who so testified had practiced law, or been admitted to practice, in the State of Indiana, and neither was shown to be familiar with the procedures of the Gary, Indiana or Lake County, Indiana Police Departments.

That neither of said experts had been in attendance at the original trial and neither had been provided with the entire transcript of the original trial proceedings.

Post–Conviction Record at 1234.

The court found that one of the experts was an attorney from the Public Defender's Office in the State of Illinois and had experience in trying and supervising the trial of other Public Defenders in death penalty cases, and in that witness's opinion, there had been considerable development in recent years of the manner in which capital cases should be tried and that his opinion

as to the trial counsel's competence would not have been the same if rendered in 1982.

Likewise the court found that the other expert was an active associate professor of law at Indiana University School of Law and had authored articles in books about trial tactics, had only tried six jury cases during his professional career, and had tried one murder case while sitting in a second chair. He had tried no death penalty cases. His trial experience was limited to his practice in the states of New York and North Carolina.

The court further found that there was no testimony from either of these experts as to what trial counsel did or did not do in his representation of appellant that was a mockery of justice or so shocking to the conscience that it would disqualify appellant's counsel under the *Strickland* rule. We agree with the post-conviction court in its observations and find no error in regard to the post-conviction court's rulings as to these witnesses.

Appellant also claims the findings of fact and conclusions of law of the post-conviction relief court were inadequate. Rather than being inadequate, however, the post-conviction court's findings of fact and conclusions of law are so thorough and detailed that they might well be used as a model for other judges presiding in post-conviction relief hearings.

For the most part, the issues attempted to be raised by appellant in this portion of his brief are nothing more than an attempt to have a complete reevaluation of his arrest, the charge, the original trial, and the original appeal. Indiana Post–Conviction Rule 1 specifically states that post-conviction remedy is not a substitute for appeal. The only justification for raising these issues at this time is in an attempt to demonstrate ineffective performance of trial and appellate counsel. This appellant has failed to demonstrate that justification.

Appellant claims the post-conviction court erred when it failed to inspect the State's files *in camera* to determine whether additional evidence had been suppressed. In order to facilitate the briefing of this issue on appeal, the appellant, in November of 1988, filed a petition for writ of *certiorari*, asking this Court to order the trial court to certify his sealed offer to prove. The offer related to what the appellant designated as newly-discovered evidence concerning irregularities in the police department regarding the investigation and the preservation of evidence in his case.

In November of 1988, this Court issued an order granting such a petition for *certiorari*. In July of 1990, appellant filed a "Verified Request to Supplement *Ex Parte* Offer to Prove." In August of 1990, this Court issued an order to remand this case to the trial court in order that it might examine appellant's alleged newly-discovered evidence and the police files pertaining thereto. This Court, however, denied appellant's request that this be done in the absence of the State and ordered that an *in camera* hearing be held by the trial judge in the presence of both parties.

Upon remand, the trial court conducted *in camera* hearings with both counsel for defendant and the State present. Due to the nature of the allegations, it was necessary for the trial judge to travel from Fort Wayne to Lake County to inspect the police records in Lake County.

On July 30, 1992, the trial judge, after meticulously exploring each of the many allegations contained in appellant's claims of newly-discovered evidence and improper conduct, made his report to this Court, including his findings of fact and conclusions of law. The trial court considered evidence of thirteen different items, including an unrevealed statement of a prosecution witness, an undisclosed 1948 conviction of a prosecution witness for reckless homicide, dispatch tapes made at the time of the crime indicating a possible fourth suspect wearing a grey suit, expense payments to prosecution witnesses, a special police escort for two witnesses on the day of trial, joint meetings between the prosecution and two crucial witnesses, and a photo array in the prosecutor's file. Among other things, the trial judge on remand concluded that the items lacked materiality to either guilt or punishment, that they did not demonstrate the use of perjury or other acts of

misconduct by the prosecution or police in the nature of suppression, exploitation, or interference with the defense, and that their existence, nature, and handling did not show a denial of federal due process.

■ Following remand, additional briefing was allowed. In light of our remand for new sentencing hearings, we need not consider the items of evidence and their materiality and handling in relation to punishment. The denial of the federal right to a fair trial occurs, and a conviction must be reversed, if the evidence posited is material in the sense that its suppression undermines confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). With reference to the specific items referred to above as example, the undisclosed statement of the prosecution witness does not contradict his trial testimony, the 1948 conviction is stale and would not lead to usable evidence, the dispatch tapes are part of the excitement and heated action of the search for suspects, the type of special treatment of some of the witnesses was usual and ordinary and does not support an inference of their coercion or purchase, and there was no indication that the photo array was ever employed. The findings and conclusions of the trial court are supported by the record and affirmed.

Appellant argues that this Court should as a matter of state constitutional law adopt a stricter standard governing prosecutorial suppression claims than that employed in the federal system, and in support cites the action of the Minnesota Supreme Court in *State v. Kaiser* (1992), Minn., 486 N.W.2d 384. In that case, the Minnesota Court was faced with gross and intentional misconduct of the prosecutor, and was thereby moved to employ its supervisory powers. Here we are not confronted with deliberate suppression and deliberate prosecutorial exploitation of the fruits of that suppression at trial, and there is no destruction of evidence involved. While this Court has similar supervisory powers, we are not moved to employ them under these circumstances.

■ In his remand brief, appellant also claims the trial court on remand (1) did not adequately insure the integrity of the police files to be examined in camera, and (2) erred in excluding the testimony of codefendant North. With respect to (1), above, appellant was given multiple opportunities to identify possible files and evidence in the hands of the prosecution; a specific named officer was designated to gather all of the police files; and the prosecutor assured the trial court that all files had been turned over. We find this process adequate. With respect to (2), above, there was no such final evidentiary ruling, but only a preliminary one issued in the pre-hearing period that, if the privilege were claimed by North as a witness at the remand hearing, then the trial court would probably sustain the claim. In sum, suffice it to say that the trial judge's detailed work convinces us that appellant's case for a new trial on the question of guilt has not been enhanced by this remand.

X.

■ Appellant finally claims that the post-conviction court was in error in rejecting his claim that there was error in the instructions on the charge of felony murder. Appellant claims that the instructions were erroneous in that they did not require the State to prove a class A felony robbery. With respect to this claim, the post-conviction court found:

> That the trial court properly instructed the jury on the elements of the offense of Felony–Murder, including the underlying felony of Robbery, under I.C. 35–42–1–1 and I.C. 35–42–5–1.
>
> That the trial court instructed the jury that in considering any single instruction the jury should consider it with all other instructions given.
>
> That trial counsel for the Petitioner failed to object to any of the instructions given to the jury at the conclusion of the case.

Post–Conviction Record at 1227. The felony murder charge alleged that appellant shot and killed George Yaros while engaged in the process of taking money from

David Reba through the use or threat of use of force. This charge does not specifically allege the statutory aggravating factors required for the class A felony of robbery. The felony murder statute requires that the death of another result during the commission of the felony of robbery. Robbery is defined at Ind.Code 35–42–5–1. There is no basis in this charge, the felony murder statute, or reason itself, to condemn the court's instructions.

Appellant relies upon *Rodriguez v. State* (1979), 179 Ind.App. 464, 385 N.E.2d 1208. This case holds that there are no lesser homicides within felony murder. Appellant relies upon the general attempt statute, I.C. 35–41–5–1, which commands that an attempt to commit a crime is a felony of the same class as the crime attempted. We see no basis in these authorities for appellant's claim.

In addition to the lack of a sound argument on the merits and the lack of an objection to the court's instruction as required by Ind.Trial Rule 51(C), noted above from the post-conviction court's findings, there is additional reason to reject this ground as a basis for post-conviction relief. In this instance, the sentencing court merged the felony murder conviction with the intentional murder conviction, and sentenced appellant to death upon the intentional murder conviction. If one assumes incomplete or vague jury instructions on the charge of felony murder, such assumption would not in the interests of justice require the granting of post-conviction relief in the form of a new trial on one or all of the charges.

The judgment of the post-conviction court is reversed, and the case remanded with instructions to set aside the sentence of death and to grant post-conviction relief in the form of new jury and judge sentencing hearings, or in the absence of such new hearings, the imposition of a sentence of years.

SHEPARD, C.J., and DeBRULER, DICKSON and KRAHULIK, JJ., concur.

GIVAN, J., dissents with separate opinion.

GIVAN, Justice, dissenting.

I respectfully dissent to the majority opinion's remanding of this case to the trial court for resentencing.

The majority takes the position that trial counsel was ineffective because at the sentencing hearing he made no effort to bring forth "mitigating circumstances." The only hint of a possibility of mitigating circumstances in this case we find in the statement of the post-conviction court wherein it observed that "there were a number of witnesses who might have testified during the penalty phase of the trial concerning petitioner's upbringing, his family, his education, his artistic talent, and other life activities." These general statements alone hardly are sufficient to support a finding that trial counsel was ineffective for failing to dwell on these so-called mitigating circumstances.

Given the gravity of this crime and the overwhelming evidence against appellant, it hardly could be perceived that had evidence been presented that he had served in the Peace Corps and taught Sunday school that his sentence should be mitigated.

A fabric of reversible error which the majority opinion seeks to weave reminds one of the story we heard in childhood of the king and his fine clothing. Like the king in the story, the majority opinion marches naked into the trial court for a rehearing. I cannot justify impinging the trial court with a fourth rehandling of this case.

The trial court should be affirmed.