**Earl E. SAUERHEBER a/k/a Earl E. Sauerheber III, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 89S00–9701–CR–18.

Supreme Court of Indiana.

Sept. 1, 1998.

---

E. Thomas Kemp, Richmond, for Appellant.

Jeffrey A. Modisett, Attorney General, Janet Brown Mallett, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

Earl Sauerheber was convicted of murder and sentenced to sixty years imprisonment. In this direct appeal, Sauerheber raises six issues for review: (1) whether the trial court erred in admitting his confession, (2) whether the trial court committed reversible error in admitting testimony, without objection, that he was incarcerated on an unrelated charge, (3) whether the trial court erred in admitting a photograph of the victim and her younger brother, (4) whether delay of one year between arrest and trial violated his Sixth Amendment right to a speedy trial, (5) whether the trial court erred in sentencing him to an aggravated sentence, and (6) whether he received ineffective assistance of counsel at trial and at sentencing.

We affirm the conviction and sentence.

**Factual and Procedural Background**

On June 16, 1986, Mary Kathleen Phillips reported to Richmond Police that her eleven-year-old daughter Katina had been missing since June 15. Eight weeks later, Katina's badly decomposed body was discovered in a vacant house about one block from her home. She was found nude with a shirt tied around her neck. Her remaining clothing was piled in another room. Underneath the clothing, the police found a light bulb from which they later obtained a latent fingerprint. An autopsy concluded that Katina had died from asphyxia due to ligature strangulation.

Police attempted to question some minors who lived in a group home within a block of the vacant house where Katina's body had been found. Katina had been known to associate with some of them and even had two of their names written on her shoes. The director of the home refused the police access to the minors. Earl Sauerheber, then fifteen years old, was a resident of that home. Attendance records revealed that Sauerheber was missing from the home between June 14 and June 16.

In 1995 police first obtained Sauerheber's fingerprint record and determined that the print on the light bulb matched Sauerheber's right thumb print. In early August, Detective Dunnington of the Richmond Police Department traveled to southern Indiana where Sauerheber was being detained on a Floyd County conviction. After being advised of and waiving his *Miranda* rights, Sauerheber told Detective Dunnington that he did not know Katina, did not recall her murder, was never in the vacant house where her body was discovered, and did not kill her.

The State then secured a search warrant for samples of Sauerheber's hair, saliva, and blood. The Wayne County Sheriff's Department transported Sauerheber, who was still being held on the Floyd County conviction, to Richmond for the collection of those samples. Detective Dunnington was present prior to and during the collection, which occurred on August 21, 1995. Sauerheber made several

requests for an attorney during this encounter. Dunnington responded that Sauerheber was not entitled to an attorney at that time and did not question Sauerheber regarding the case.

Although there were no charges pending against him in Wayne County, Sauerheber remained in the Wayne County Jail until August 25 when he was transported to the Richmond Police Department. Detective Dunnington had requested that another officer conduct the interview based on his poor relationship with Sauerheber from prior contacts. Captain William Shake began his interview with Sauerheber by reviewing a standard waiver of *Miranda* rights form. Shake informed Sauerheber that he had the right to remain silent and the right have an attorney present before and during questioning. Sauerheber then asked Shake why he had not been provided an attorney when he requested one four days earlier. Shake explained that an attorney would serve no purpose during the execution of a search warrant. As Shake proceeded to the advisement that Sauerheber could request the appointment of an attorney if he could not afford one, Sauerheber asked if the attorney would be appointed "even before I'm arrested or after I'm arrested?" Shake responded, "probably after you're arrested." Sauerheber indicated that he understood his rights and that he wished to waive them. He then gave a videotaped statement in which he admitted the killing.

According to that statement, Sauerheber and Katina had initially engaged in consensual touching and kissing in the vacant house. This escalated to the point where she was naked and he was rubbing his penis between her legs. He continued even after she expressed concern about getting pregnant and asked him to stop. Katina then bit his finger, and he grabbed her around the neck to get her to release his finger. He continued to choke Katina until she was either unconscious or dead. Fearing that he had killed her, he tied her shirt around her neck and dragged her to the room where her body was later discovered.

Sauerheber was arrested on August 28, 1995, after signing the transcribed copy of his August 25 statement. Because Sauerheber was fifteen years old at the time of the offense, the State initiated juvenile proceedings against him. Juvenile jurisdiction was waived on May 9, 1996, and the State charged Sauerheber on May 21 with murder, felony murder, and attempted rape as a class A felony. Prior to trial, Sauerheber's counsel filed a motion to suppress his August 25, 1995 statement on the ground that his waiver of *Miranda* rights was not made knowingly, voluntarily, or intelligently. The trial court denied this motion after a hearing. Sauerheber was convicted of all counts after a three day jury trial. Prior to sentencing, the trial court vacated the felony murder charge because of merger and the attempted rape count because the statute of limitations had run on that charge as reduced to a class B felony. The trial court then imposed the maximum sentence of sixty years for murder.

## I. Admissibility of Confession

### A. *Invocation of Right to Counsel*

■ Sauerheber first argues that any further police questioning was prohibited after his request for counsel at the August 21 sampling of his blood. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), any person in custody has the right to have counsel present (or even appointed) prior to and during interrogation. When a defendant has invoked this right to counsel, the police must cease questioning until counsel has been made available or until the accused initiates further communication with the police. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).[1]

■ The purpose underlying the *Miranda* warnings is to protect an individual's Fifth Amendment privilege against self-incrimination by placing reasonable limitations

---

1. Because Sauerheber did not raise an *Edwards* claim at the trial court level, he may not now do so on appeal. *Marshall v. State*, 621 N.E.2d 308, 316 (Ind.1993) (any grounds not raised in the trial court may not be raised on appeal). We nonetheless consider the merits of this claim because it relates to the issue of the voluntariness of the waiver of *Miranda* rights and because appellate counsel has raised the issue under the rubric of ineffective assistance of counsel.

on police interrogations. *Miranda,* 384 U.S. at 478–79, 86 S.Ct. 1602. This privilege does not apply to the taking of blood samples. *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). For that reason alone, Sauerheber's request had no effect at the time it was made on August 21. Nor did the August 21 request prevent the police from initiating contact with Sauerheber on August 25. Unlike the defendants in *Miranda* and *Edwards,* Sauerheber was not being questioned when he requested counsel. The holdings of those cases are explicitly limited to circumstances in which an individual is "subjected to questioning" or "during custodial interrogation[.]" *Miranda,* 384 U.S. at 478, 86 S.Ct. 1602; *Edwards,* 451 U.S. at 484, 101 S.Ct. 1880. The Indiana cases cited by Sauerheber also dealt with an assertion of the right to counsel at a time when that right exists, i.e., in the context of custodial interrogation. *See Propes v. State,* 550 N.E.2d 755 (Ind.1990); *Sleek v. State,* 499 N.E.2d 751 (Ind.1986); *Minnick v. State,* 467 N.E.2d 754 (Ind.1984).[2]

The rationale of the authorities on which Sauerheber relies is that the combined effect of custody and interrogation is potentially inherently coercive. In the absence of either, these authorities are not controlling. We are dealing here with an issue of federal constitutional law on which the Supreme Court of the United States has the last word. The Supreme Court has stated recently that *Edwards*

applies only when the suspect ha[s] *expressed* his wish for the particular sort of lawyerly assistance that is the subject of *Miranda.* It requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire

for the assistance of an attorney *in dealing with custodial interrogation by the police.*

*McNeil v. Wisconsin,* 501 U.S. 171, 178, 111 S.Ct. 2204, 115 L.Ed.2d 158 (1991) (internal quotation marks and citations omitted, emphasis in original). The Supreme Court further observed, albeit in *dicta:* "We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation'.... Most rights must be asserted when the government seeks to take the action they protect against." *Id.* at 182 n. 3, 111 S.Ct. 2204. This strongly suggests that the rights under *Miranda* and *Edwards* do not extend to permit anticipatory requests for counsel to preclude waiver at the time interrogation begins. To the contrary, as put by the Seventh Circuit, "there are certain 'windows of opportunity' in which a defendant must assert his *Miranda* right to counsel." *United States v. LaGrone,* 43 F.3d 332, 338 (7th Cir.1994). *See also United States v. Thompson,* 35 F.3d 100 (2d Cir.1994) (*Miranda* rights may not be invoked outside of the context of custodial interrogation); *accord Alston v. Redman,* 34 F.3d 1237 (3d Cir.1994); *United States v. Wright,* 962 F.2d 953 (9th Cir.1992). The context of interrogation may be found before actual questioning begins. However, Sauerheber's August 21 encounter had an explicit purpose—sampling—other than interrogation and there is no indication that the police contemplated questioning Sauerheber at that time. *Cf. United States v. Kelsey,* 951 F.2d 1196 (10th Cir.1991).[3] We conclude from these precedents that because Sauerheber's August 21 request for counsel fell outside one of those windows, the police were not prevented under *Edwards* from questioning him

---

**2.** Sauerheber also cites *Currie v. State,* 512 N.E.2d 882 (Ind.Ct.App.1987). That case, however, deals with an interrogation that occurred after the appointment of counsel and presents entirely different considerations under the Sixth Amendment and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986).

**3.** Kelsey arrived at his home to find a police narcotics strike force searching his house. He was searched prior to entering the house, found to be in possession of cocaine, arrested and handcuffed. Shortly thereafter, "Kelsey asked to see his lawyer three or four times. The police responded that if they 'allow[ed] him to see [his]

lawyer now, then they would not be able to ask [him] any further questions and would have to take [him] to jail.'" *Kelsey,* 951 F.2d at 1198. Based on this exchange, the court held that it was clear "that the police intended to question Kelsey at some point at his home, and that the police understood Kelsey to be invoking his right to counsel during questioning." *Id.* at 1199. Unlike Kelsey, Sauerheber had not been arrested at the time of his request for counsel. There was a clear purpose for the encounter other than interrogation, and the police did not indicate in any way an intention to question him.

four days later, after advising him at that time of his *Miranda* rights and receiving no request for an attorney.

### B. *Advisement of Miranda Rights*

■ Sauerheber also challenges his confession on the grounds that Captain Shake misadvised him of his *Miranda* rights when he told him that an attorney would be appointed "probably after you're arrested." As *Miranda* itself made clear, the specific warnings given to a suspect need not use the precise language of the decision. *Miranda,* 384 U.S. at 476, 86 S.Ct. 1602; *see also California v. Prysock,* 453 U.S. 355, 359, 101 S.Ct. 2806, 69 L.Ed.2d 696 (1981).

■ The Supreme Court has previously held that the advisement "[a lawyer] will be appointed for you ... if and when you go to court" satisfies *Miranda,* as it simply anticipates a suspect's question regarding when counsel will be appointed. *Duckworth v. Eagan,* 492 U.S. 195, 198, 204, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989). As was true in *Duckworth,* a case arising out of an Indiana state criminal trial, this is a proper statement of the law in Indiana where counsel is appointed at the initial hearing which occurs after arrest and the filing of charges. *Id.* at 204, 109 S.Ct. 2875; *see also* IND.CODE §§ 35–33–7–6 & 35–33–7–3(a) (1998). Captain Shake's "probably" response is arguably a better statement of Indiana law than the one upheld in *Duckworth,* because it at least anticipates the possible appointment of counsel prior to the time of arrest or initial hearing for a suspect who makes a request during custodial interrogation. Under *Duckworth,* Sauerheber has not presented a viable constitutional claim.

### C. *Voluntariness of Waiver*

■ Sauerheber also challenges the admission of his confession on the grounds that the State failed to prove that he waived his right to counsel knowingly and voluntarily. The State must prove the voluntariness of the waiver of *Miranda* rights and the voluntariness of a confession by a preponderance of the evidence. *Smith v. State,* 689 N.E.2d 1238, 1246 n. 11 (Ind.1997). We look to the totality of the circumstances surrounding the

waiver or confession in making this determination. *Carter v. State,* 686 N.E.2d 1254, 1257 (Ind.1997). Our focus is whether the waiver or confession was free and voluntary, and not induced by any violence, threats, or other improper influence. *McFarland v. State,* 519 N.E.2d 528, 530 (Ind.1988). When considering the admissibility of a confession on appeal, we will uphold the finding of the trial court if there is substantial evidence of probative value to support it. *Snellgrove v. State,* 569 N.E.2d 337, 343 (Ind.1991).

■ Sauerheber does not allege any violence, threats or improper influence; rather, his asserted involuntariness focuses on his disappointment and confusion with not being provided an attorney on August 21 and the four days thereafter while he remained in the Wayne County Jail. Prior to interrogating Sauerheber on August 25, Captain Shake began reviewing a standard *Miranda* waiver form with him. Shake told Sauerheber, "you have a right to have a lawyer present before we ask you any questions and have him with you during questioning. Do you understand that?" Sauerheber then made several statements indicating that he did not understand why he was not able to talk to an attorney during the August 21 search. Sauerheber's queries concluded with the following exchange:

> Shake: We had a court order to bring you up here for these samples.
>
> Sauerheber: Uh ... like I say, I set there, didn't know, what you know what was going on, nothing like that, and like I say, that's why I wanted to' talk to an attorney and see if everything, you know, whatever.
>
> Shake: I understand.that.
>
> Sauerheber:' Okay, but go ahead.
>
> Shake: Let's see, where'd I leave off, oh ... you have the right to have a lawyer present before we ask you any questions....

Sauerheber's statements and questions during this advisement colloquy dealt exclusively with his past request for counsel. Captain Shake responded to those inquiries patiently and thoroughly. As noted above, Sauerheber finally indicated apparent satisfaction with

the explanation and instructed Captain Shake to "go ahead." In contrast to Sauerheber's questions about the August 21 episode, Shake's advisement of present rights was clear and unequivocal. In plain language, he informed Sauerheber that he did not have a right to counsel during the execution of a search warrant on August 21 but did have that right during questioning on August 25.

In sum, we conclude from a review of the totality of circumstances that Sauerheber was properly advised of his *Miranda* rights and knowingly and voluntarily waived those rights. Any confusion surrounding the August 21 denial of counsel was adequately explained by Captain Shake prior to the August 25 waiver. Sauerheber's confession was properly admitted into evidence.

## II. Evidence of Incarceration on Other Charges

Sauerheber next asserts that it was fundamental error for the State to ask Shake if Sauerheber was "incarcerated for an unrelated matter" at the time of his confession.[4] Although this evidence arguably would be inadmissible under Indiana Rules of Evidence 403 and 404(b), defense counsel did not object to the question or its affirmative answer. Therefore, appellate review is waived unless the admission of evidence constitutes fundamental error. *Turner v. State*, 682 N.E.2d 491, 497 (Ind.1997). In order to qualify as fundamental error, an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible. *Barany v. State*, 658 N.E.2d 60, 64 (Ind.1995). In light of all the evidence presented at trial,

the introduction of evidence of incarceration for a single, undefined offense does not rise to the level of fundamental error.[5]

## III. Admission of Photograph

Sauerheber also contends that the trial court erred in admitting a photograph of the victim and her younger brother taken several months prior to the murder. Defense counsel objected on the grounds that the photograph was irrelevant and an attempt to invoke the sympathy of the jury.

We review the admission of photographic evidence under an abuse of discretion standard. *Isaacs v. State*, 659 N.E.2d 1036, 1043 (Ind.1995). The focus of our inquiry is whether the photograph is relevant and whether its probative value is substantially outweighed by its prejudicial impact. *Humphrey v. State*, 680 N.E.2d 836, 842 (Ind.1997); Ind. Evidence Rules 401, 403. We have previously found a pre-death photograph to be "marginally relevant" in a murder trial. *Humphrey*, 680 N.E.2d at 842. More importantly, this particular photograph was a larger version of the same one shown to the defendant when he was first questioned about Katina's murder. It is therefore relevant to show that Sauerheber's denial and subsequent confession related to the same murder with which he was charged.

We have previously discouraged the admission of photographs that smack of victim impact evidence because of their possible emotional impact on the jury. *Id.* In this case, however, the trial court did not abuse its discretion by admitting the photograph.[6]

4. Sauerheber's brief incorrectly states that this information was solicited from Detective Dunnington. The portion of the record cited indicates that the question was asked of Captain Shake.

5. For example, we have previously held that, because of the abundance of independent evidence of guilt, reference to a prior arrest for a sex crime in a prosecution for child molesting did not constitute fundamental error. *Lewis v. State*, 511 N.E.2d 1054, 1057 (Ind.1987). Incarceration for "an unrelated matter," as in this case, is plainly less prejudicial. Moreover, we do not agree with Sauerheber's contention that this evidence was sought as an "evidentiary harpoon." Part of Sauerheber's defense at trial was to challenge that he knowingly and voluntarily

waived his *Miranda* rights. The State's question, if improper, demonstrated that Sauerheber was not held in the Wayne County Jail for four days prior to his confession solely as a result of the murder investigation.

6. Sauerheber also asserts that admission of the photograph violated his right to a fair trial under the federal and state constitutions. U.S. Const. amends. V, XIV; Ind. Const. art. I, §§ 12, 13. The only authority cited is *Kennedy v. State*, a case in which this Court reversed a conviction based on several incidents of improper judicial intervention that led to the conclusion that the trial judge "appear[ed] to have abandoned his position of impartiality and neutrality, which, especially in light of the closeness of the insanity

## IV. Speeder Trial Right

Sauerheber next argues that he was denied his right to a speedy trial under the Sixth Amendment.[7] Sixth Amendment claims are examined under a balancing test that focuses on four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Gilmore v. State*, 655 N.E.2d 1225, 1227 (Ind.1995). The length of delay is a "triggering mechanism," and the other factors need only be considered once the delay is "presumptively prejudicial." *Barker*, 407 U.S. at 530, 92 S.Ct. 2182.

The delay from arrest to trial in this case was only one year. We nonetheless find this delay sufficient to trigger a consideration of the other factors. *See Lahr v. State*, 615 N.E.2d 150, 152 n. 3 (Ind.Ct.App. 1993) (collecting cases). Of the four factors, however, the only one that weighs in Sauerheber's favor is the reason for delay, as most of it was the result of the State's tardiness in securing his waiver from juvenile court. This is clearly outweighed by the relative brevity of the delay, Sauerheber's decision not to assert his speedy trial right, and the absence of any prejudice as a result of the delay. Sauerheber was incarcerated on another charge, and the crime was already ten years old. Under these circumstances, neither wrongful incarceration nor any prejudice to the preparation of his case is suggested, much less established. Sauerheber was

not denied his Sixth Amendment right to a speedy trial.

## V. Sentencing Issues

Sauerheber next alleges several errors relating to his sentencing. Sentencing is within the sound discretion of the trial court, and we will review sentencing only for abuse of discretion. *Grund v. State*, 671 N.E.2d 411, 418 (Ind.1996).

Sauerheber first argues that the trial court erred when it referred to the age of the victim as a "statutory" aggravator, because the statutory aggravator that "[t]he victim of the crime was less than twelve (12) years of age" did not exist at the time of the murder.[8] Sauerheber is correct in this observation, but we find this error to be of little consequence. The statute existing in 1986 provided that the specifically delineated aggravating circumstances "do not limit the matters that the court may consider in determining the sentence." IND.CODE § 35–38–1–7(d) (Supp.1986). Although this factor was erroneously referred to as a "statutory" aggravating factor, it was nonetheless proper to consider as an aggravating factor.

Sauerheber next asserts that the trial court erred in finding as an aggravating factor that the defendant's history of criminal activity has been "principally against children." During the sentencing hearing, defense counsel objected to the trial court's consideration of an inculpatory statement given by the defendant when he was fourteen

issue, was extremely detrimental to appellant's cause." 258 Ind. 211, 226, 280 N.E.2d 611, 621 (1972). The admission of this one photograph does not begin to rise to the level of the judge's conduct in *Kennedy* nor does it violate the constitutional provisions cited by Sauerheber.

**7.** Although captioned as a Sixth Amendment challenge, Sauerheber's argument nonetheless focuses on Criminal Rule 4 and the speedy trial provision of the Juvenile Code. *See* IND.CODE § 31–6–7–6 (1993), *repealed by* Pub.L. No. 1–1997, § 157, 1997 Ind. Acts 555. Because he never raised any of these issues at the trial court level, such claims are waived for purposes of appeal. *See, e.g., Mills v. State*, 512 N.E.2d 846, 850 (Ind.1987) (noting that the appropriate motion under Criminal Rule 4(A) is not one for discharge but rather one for release on recognizance and holding that a defendant who failed to

object to a trial setting beyond the six-month period of the rule waived the issue).

Sauerheber also claims that he was denied a forum to assert his speedy trial right and that a record that is silent as to the reasons for delay may not be used against him. Despite these claims, Sauerheber is not absolved of the responsibility of raising these issues at some juncture prior to trial—as did each defendant in the cases that he cites. *See Morrison v. State*, 555 N.E.2d 458 (Ind.1990); *C.W. v. State*, 643 N.E.2d 915 (Ind.Ct.App.1994); *Nance v. State*, 630 N.E.2d 218 (Ind.Ct.App.1994); *Hendricks v. State*, 555 N.E.2d 178 (Ind.Ct.App.1990); *State v. Roberts*, 171 Ind.App. 537, 358 N.E.2d 181 (1976).

**8.** IND.CODE § 35–38–1–7.1(b)(5) (1998). This aggravator was added to the predecessor statute in 1987. *See* Pub.L. No. 320–1987, § 1, 1987 Ind. Acts 3023–24.

years old in which he admitted molesting a ten year old girl. The objection was grounded in the failure of the police to secure a valid juvenile waiver prior to taking the statement.

■■■ A crime admitted by the defendant is properly considered in evaluating prior criminal history. *Tunstill v. State*, 568 N.E.2d 539, 544 (Ind.1991). Although a juvenile waiver is a prerequisite for such evidence to be admissible at trial, the statement can nonetheless be considered in a sentencing hearing where the trial court is not confined to evidence that would be admissible at trial. *Madden v. State*, 549 N.E.2d 1030, 1034 (Ind.1990). The statement was made after Sauerheber had indicated that he wanted to give a statement and that the statement was of his own free will. The statement contains the necessary "indicia of reliability" for admissibility at sentencing. *See Powell v. State*, 644 N.E.2d 82, 83 (Ind.1994).[9] Moreover, the conclusion that Sauerheber has a history of committing crimes against children is amply supported by other items in the record. The trial court noted that the victim of the defendant's misdemeanor battery conviction was his two month old child, and the victim of his felony battery conviction was a twelve year old child.

■■■ Sauerheber also contends that the trial court erred in considering, as part of his criminal history, that he had witnessed his brother kill a person then helped him dispose of her body. This event was described in the statement given by the defendant on August 25, 1995. Because that confession was properly admitted as discussed in Part I above, the trial court did not err in considering its content at sentencing.

■■■ Finally, Sauerheber asserts that the trial court gave improper weight to crimes that occurred after the commission of Katina's murder. Criminal activity that occurs subsequent to the offense for which one

is being sentenced is a proper sentencing consideration. *Hoage v. State*, 479 N.E.2d 1362, 1366 (Ind.Ct.App.1985). The defendant's aggregate history of criminal activity was properly used as an aggravating circumstance; the fact that most of this activity occurred after Katina's murder does not require the trial court to attach any less significance to it.

■■ In sum, the trial court did not err in sentencing the defendant. Even a single aggravating circumstance may be sufficient to sustain an enhanced sentence. *Brown v. State*, 667 N.E.2d 1115, 1117 (Ind.1996). In this case, the trial court properly found more than one aggravating factor, explained each, and performed the requisite weighing process. *Hammons v. State*, 493 N.E.2d 1250, 1254 (Ind.1986).

## VI. Ineffective Assistance of Counsel

■■■ As a final issue, Sauerheber contends that he was denied his Sixth Amendment guarantee of effective representation by counsel. To prevail on such a claim, Sauerheber must show that (1) trial counsel's performance was deficient under prevailing professional norms and (2) the deficient performance was so prejudicial to his case that he was denied a fair trial. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Taylor v. State*, 689 N.E.2d 699, 705 (Ind.1997). There is a strong presumption that counsel's performance was not deficient, and this presumption must be overcome with strong and convincing evidence. *Taylor*, 689 N.E.2d at 705.

Sauerheber first asserts that trial counsel was ineffective in not arguing *Edwards* as a ground for suppressing his confession. As discussed in Part I above, trial counsel was correct in not raising the issue, because it would not have prevailed.

■■ Sauerheber next argues that his trial counsel was deficient because he failed to make a pretrial objection to Count III, attempted rape as a class A felony.[10] The trial

---

9. The statement held admissible in *Powell* was the hearsay statement of a witness. The court found it reliable because it was sworn and because the defendant had the opportunity to refute it at the sentencing hearing, where his testimony

instead seemed to buttress it. Sauerheber's statement is arguably even more reliable because it was his own and given of his own free will.

10. Sauerheber's brief misstates the trial court's reason for vacating the rape count. He asserts

court vacated the rape count prior to sentencing because the basis for elevating the rape from a class B felony to a class A felony was the murder of which Sauerheber was convicted in Count I. The trial court therefore reduced the conviction to a class B felony, then found that the five year statute of limitations for a class B felony had expired nearly five years prior to the filing of charges. IND.CODE § 35–41–4–2(a)(1) (1998). The propriety of this ruling is not raised on appeal.

■■■ When an ineffective assistance of counsel claim is based on trial counsel's failure to make an objection, the appellant must show that, had a proper objection been made, it would have been sustained. *Lloyd v. State*, 669 N.E.2d 980, 985 (Ind.1996). The reduction of the rape count to a class B felony was not required until the jury convicted Sauerheber of both murder and rape as a class A felony. Had the jury convicted Sauerheber of rape and not murder, this reduction would not have been warranted. A pretrial motion to dismiss Count III would not have been sustained; therefore, trial counsel was not ineffective for failing to make one.

■■ Sauerheber also contends that his trial counsel's performance was deficient in failing to object to evidence that he was incarcerated on an unrelated matter at the time he gave his confession. *See* Part II, *supra.* While an objection to this testimony may have been sustained, any prejudicial effect of the testimony is minimal. To establish prejudice, Sauerheber must show there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. The mere mentioning of Sauerheber's incarceration on another charge during the course of a three day jury trial does not rise to that level. The jury's decision to convict was likely based, not on Sauerheber's incarceration for some other undefined crime, but on evidence that his fingerprint was found at the crime scene, that he was absent from his group home at the time of Katina's disappearance, and that he confessed to killing her.

■■ As a final point, Sauerheber asserts that trial counsel's performance at his sentencing hearing was deficient. Specifically, he argues that trial counsel should have corrected the State's assertion that the victim's age was a statutory aggravating factor. As noted in Part V above, this distinction is of little consequence. Any deficiency in this regard was not prejudicial, as the trial court was well within the law to consider the factor as a non-statutory aggravator.

■■ Sauerheber also contends that his trial counsel was deficient in failing to present mitigating evidence. The Presentence Report contained evidence that the defendant had lived a troubled childhood that included abuse by his father, abandonment by his mother, placement in foster homes and ultimately a children's home, and usage of alcohol and marijuana at a very young age. Although trial counsel drew the court's attention to this section of the Presentence Report, he did not offer any direct evidence to support or explain Sauerheber's childhood. Presentation of such evidence would have been, to some extent, cumulative. Failure to explain these factors, which were already before the court, does not fall below prevailing professional norms, especially since the trial court is not required to find the existence of a mitigating factor that has been argued by counsel. *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993).

Sauerheber cites *Averhart v. State,* 614 N.E.2d 924, 930 (Ind.1993) for the proposition that trial counsel's failure to present any evidence at sentencing save a statement by the defendant and his mother constituted

---

that the charging information was defective in that it did not include the "deadly force" element necessary to elevate the offense from a class B felony. IND.CODE § 35–42–4–1(a) (1998). The information used the language "resulting in her death" instead of the "using ... deadly force" language of the statute. The information stated the crime in the words of the statute or words that convey a similar meaning. We have previously held that the exact words of the statute need not be employed. *Smith v. State,* 465 N.E.2d 702, 704 (Ind.1984).

ineffective assistance of counsel meriting reversal. That case is distinguishable, however, in at least two important respects. First, *Averhart* was a death penalty case in which mitigating evidence assumes much greater importance. This Court observed that counsel's efforts "might be effective representation at an ordinary felony sentencing hearing...." *Id.* Second, *Averhart* was also a postconviction case in which trial counsel testified that he made no investigation for additional witnesses nor did he even discuss the testimony of Averhart or his mother with them prior to the sentencing hearing. *Id.* In contrast, we do not know the degree of investigation undertaken by Sauerheber's counsel, save that he was granted a two-week continuance upon his request that "additional time is needed to prepare for sentencing hearing." We also know that trial counsel brought the potentially mitigating evidence to the attention of the court and noted that it was "not offered to justify what has happened in this case." Sauerheber's trial counsel was not ineffective.

### Conclusion

Earl Sauerheber's conviction for murder and sixty year sentence are affirmed.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

SELBY, J., concurs in result.