Kenneth Jerome LLOYD, Appellant,

v.

STATE of Indiana, Appellee.

No. 71S03–9505–CR–578.

Supreme Court of Indiana.

Aug. 7, 1996.

Deborah K. Hays, Granger, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

## ON PETITION FOR TRANSFER

SELBY, Justice.

Lloyd appeals from his conviction for Neglect of a Dependent, a Class B felony, I.C. § 35–46–1–4, for which he was sentenced to twenty years imprisonment.[1]  After considering his appeal, we conclude that the decision of the trial court is in all respects affirmed.

Angela Green resided in South Bend, Indiana with her four children, Shawna, Steven, Shane, and eighteen-month old Shawn. In December of 1992, Angela Green met the defendant, Kenneth Lloyd.  That same month, on Christmas Eve, Green and Lloyd began cohabitating at Green's residence. Lloyd immediately assumed a role in the household disciplining the infant Shawn.

On January 11, 1993, Green's eldest daughter, Shawna, then age eleven, informed Green that Shawna had seen a "whep" on Shawn's leg.  At trial, Shawna defined for the trial court the meaning of "whep:" "a mark that looked like a sore."  (R. at 223). Later that month, Green herself noticed similar injuries on her children's legs.  She told Lloyd to "stop whupping the kids this hard." (R. at 226).  Annoyed at Green's comments, Lloyd argued with Green.  After Lloyd and Green took their disagreement to another room, Shawna discovered a large hole in the wall of the room in which Lloyd and Green had been arguing.  (R. at 227).

In March of 1993 Lloyd assumed the task of toilet training Shawn.  Lloyd warned the infant that he would punish him with a belt if he failed to use the bathroom.  Shawna reported that she heard Lloyd hit Shawn with a belt and warn Shawn to stop soiling himself.  (R. at 228–31).

Additional evidence suggests that Shawn was suffering from abuse.  On March 26, 1993, the owner of the day care center at which Lloyd usually dropped off Shawn, Ste-

---

1. The Court of Appeals would generally first review a twenty year sentence such as the sentence in this case.  However, as mentioned below, the Court of Appeals dismissed this appeal based on an erroneous belief that a critical appellate deadline had passed.  We grant transfer to provide to the defendant a review on the merits.

ven, and Shane noticed that Shawn was absent from day care. The owner expressed her concern to Green; Green advised the owner that Lloyd was toilet training Shawn. Shawn never returned to day care. Four-year-old Steven later reported to the day care owner that Shawn had bruises on his head and a black eye. The owner of the day care center confronted Lloyd about these injuries when he later dropped off Steven and Shane for day care. Lloyd denied that Shawn had such severe injuries.

A few days before April 11, 1993, Shawna heard Shawn "falling from somewhere" inside the house. Investigating, she found Lloyd, Green, and Shawn in a bedroom. When she inquired about Shawn's swollen head, Green and Lloyd told Shawna that Shawn had fallen down the stairs.

On the morning of April 12, 1993, Lloyd and Shawna dropped off Steven and Shane at day care, Shawna advising the owner that Shawn was not coming. Shawn soiled himself again that morning. Green's sister, who lived in a basement apartment below Green, heard Shawn crying at about 9:30 a.m. When Shawn stopped crying, Green's sister went to sleep. A little over an hour later, Lloyd woke Green's sister, asking for her help, claiming Shawn was choking.

Green's sister discovered Shawn's body lying on a bed upstairs, "real cold and just limp." She immediately sought emergency help. Emergency personnel arrived, attempted resuscitation, and then transported Shawn's body to the hospital, where Dr. Joseph Lee continued resuscitation attempts for an additional hour, to no avail. Dr. Lee's examination of Shawn's body revealed a body temperature of 91.4 degrees, suggesting that Shawn had been dead for at least two hours. Emergency medical personnel, as well as Dr. Lee, noted numerous injuries on Shawn's body, injuries inconsistent with Lloyd's story that Shawn had choked on food.

South Bend police officer Brian Young arrived at Green's home immediately after the emergency medical personnel. Lloyd identified himself with the pseudonym "Dwayne Proctor" and told Officer Young that Shawn began choking after eating grits or a sandwich, and that, after attempting CPR for fifteen to twenty minutes, Lloyd summoned Green's sister. Lloyd claimed to be unaware of anything else that could be wrong with Shawn. South Bend Police Officer Steve Noonan then transported Lloyd to the emergency room. Lloyd continued to identify himself as Dwayne Proctor, and told Officer Noonan that he gave Shawn a sandwich, and then left the room for about twenty minutes to make a phone call. Lloyd told Officer Noonan that Shawn bruised his eye and nose two weeks earlier when Shawn fell down some stairs.

At the emergency room, Lloyd presented yet a third variation on his description of the events of the morning. Lloyd told Dr. Lee that he had been feeding oatmeal to Shawn, that Shawn choked on the oatmeal, and that Lloyd administered CPR to Shawn when he realized that Shawn was not breathing. Lloyd explained to Dr. Lee that Shawn's bruises were the result of his falling down two weeks earlier.

That afternoon, after waiving his Miranda rights, Lloyd gave a statement to police. He explained that he returned home that morning, changed Shawn's pants, made a sandwich and gave part of the sandwich to Shawn. He claimed to have then answered the telephone and that ten to fifteen seconds later he returned and found Shawn on the bedroom floor. Advised that his story was inconsistent with Shawn's injuries, Lloyd then claimed that Shawn had fallen down both outside and inside the house that morning. Additionally, Lloyd stated that he had accidentally knocked Shawn down a stairway inside the house.

Shawn's autopsy revealed bruises to Shawn's forehead, temple, cheeks, abdomen, forearm, chin, back, groin, and buttocks. Except for some of the bruises on Shawn's head, all of these bruises were less than three to five days old. The doctor performing the autopsy determined that the forehead bruises were consistent with a blow with knuckles. The abdominal bruises were consistent with a squeeze requiring "a considerable amount of force." The autopsy revealed that internal bleeding caused Shawn's death. Specifically, Shawn's small bowel had been

completely ripped in two, causing his abdomen to fill with blood. An initial injury, which occurred five to fourteen days prior to Shawn's death, when Shawn's abdomen was squeezed with marked force, forced his bowel against his backbone and caused his bowel to split. The doctor performing the autopsy testified that this injury, unusual because it was in a relatively protected area of the body, would cause extreme pain. A second injury to the bowel, which may have occurred spontaneously, or may have been the result of multiple repetitive bouts of trauma, severed the bowel sections entirely, initiating the bleeding which resulted in Shawn's death.

Lloyd again waived his Miranda rights and gave a second statement to police. Confronted with the results of the autopsy, Lloyd explained that he had failed to mention in his earlier statement that "I accidentally stepped on the baby after he fell down the stairs."

On May 11, 1993, an Information issued charging Green and Lloyd with Neglect of a Dependent, a Class B felony. After a trial, the jury acquitted Green, but convicted Lloyd as charged. The trial court sentenced Lloyd to twenty years imprisonment.

I.

This Court has original appellate jurisdiction over sentences in excess of fifty years. Ind.Appellate Rule 4(A)(7). Lloyd was sentenced to only twenty years, thus his appeal was properly brought before the Court of Appeals. The Court of Appeals dismissed his claim on procedural grounds, without ever reaching the merits of the appeal. Because the Court of Appeal's decision to dismiss was based on an erroneous understanding of the applicable filing deadlines in this case, we granted Defendant's Petition to Transfer. The following events lead us to this decision. On September 20, 1993, Lloyd filed with the trial court a Petition for Leave to File Belated Motion to Correct Errors. His Petition was granted, and Lloyd was given until October 20, 1993 to file his Belated Motion. However, at an October 15, 1993 hearing, the court extended that deadline by two days, to October 22, 1993. The chrono-

logical docket entry sheet for the October 15 hearing on Lloyd's case states:

> State appears by Keith Doi. Defendant appears by appellate counsel, Deborah Hays. State moves for continuance for hearing on motion to produce videotape. Motion granted. Cause reset for hearing October 18. Defendant's time within which to file belated motion to correct error is now extended to October 22.

(R. at 6).

On October 22, Lloyd filed his Belated Motion to Correct Errors, and on December 6, 1993, the trial court denied his motion. On January 5, 1994, Lloyd filed his praecipe to prepare the record for his appeal to the Court of Appeals, and proceeded to bring his appeal before that court.

On May 5, 1994, Lloyd's appellate counsel filed Appellant's brief with the Court of Appeals. Counsel failed, inadvertently, to inform the Court of Appeals of the trial court's decision to extend the deadline for filing the belated motion. The Court of Appeals, reviewing the record filed with the appeal and Lloyd's statement of the case, believed that Lloyd's belated motion to correct errors had been untimely filed, and, acting on that belief, dismissed Lloyd's appeal.

Lloyd, in his Petition for Transfer, points out the erroneous information under which the Court of Appeals labored, and argues that this matter be reviewed on the merits. We agree that Lloyd has complied with all relevant procedural deadlines, and, therefore granted his Petition for Transfer.

II.

▮ Lloyd first argues that the evidence presented at trial was insufficient to support his conviction. In reviewing the sufficiency of the evidence, this Court neither weighs the evidence nor judges the credibility of the witnesses. *Traxler v. State*, 538 N.E.2d 268 (Ind.Ct.App.1989). Rather, we consider only the evidence favorable to the judgment, together with all reasonable inferences flowing therefrom. If there is substantial evidence to support the judgment, it will not be disturbed. *Id.* We will not reverse unless reasonable people would be unable to find infer-

ences adequately supporting each element of the offense. *Groves v. State*, 479 N.E.2d 626 (Ind.Ct.App.1985).

Lloyd was convicted of neglect of a dependent, which is defined by statute as follows

(a) A person having the care of a dependent, whether assumed voluntarily or because of a legal obligation, who knowingly or intentionally:

(1) places the dependent in a situation that may endanger his life or health;

. . . . .

commits neglect of a dependent, a Class D felony. However ... the offense is a Class B felony if it results in serious bodily injury.

I.C. § 35–46–1–4(a).

█ To establish that Lloyd violated I.C. § 35–46–1–4(a), in accord with the facts charged in the information, the State was required to show that Lloyd had care of Shawn, and that Lloyd knowingly placed Shawn in a situation which endangered his life or health. The State showed this with evidence demonstrating that Lloyd while caring for Shawn, allowed Shawn to receive bruises over his entire body, most predominantly about the face and head area, the top of his head, the left facial and temporal area, and tearing of the small bowel. *See Klagiss v. State*, 585 N.E.2d 674, 683 (Ind.Ct.App. 1992), *cert. denied*, 506 U.S. 819, 113 S.Ct. 66, 121 L.Ed.2d 33 (1992). To support elevation from a Class D felony to a Class B felony, the State had to prove that the neglect resulted in serious bodily injury. *Id.*

█ The record demonstrates that the State presented ample evidence from which a reasonable trier of fact could have inferred the existence beyond a reasonable doubt of each requisite element of the crime of neglect of a dependent. Several witnesses, including Lloyd himself, testified that Lloyd assumed parental responsibilities for Green's children. The State demonstrated that Shawn died from internal bleeding while in Lloyd's care. The State demonstrated that Shawn sustained numerous injuries of the type specified in the charging information, and demonstrated that these injuries were consistent with multiple instances of physical abuse.

The State showed that Lloyd used a belt and his hands to strike Shawn, that he threatened to strike Shawn for wetting himself, and that Shawn wet himself in the minutes before his death. Additionally, the State demonstrated that these injuries were inconsistent with a fall down stairs. The jury could reasonably conclude that Lloyd abused Shawn in a manner which caused Shawn to die of a severed bowel. *See Lamphier v. State*, 534 N.E.2d 699 (Ind.1989); *Klagiss*, 585 N.E.2d 674; and *Hughes v. State*, 508 N.E.2d 1289 (Ind.Ct.App.1987). Lloyd posits an alternative theory, suggesting that other members of the household may have inflicted Shawn's injuries, or that Shawn was simply an active child and may have received these injuries as a result of his youthful zeal, or that the injuries may have occurred as the result of accidents. However, the record is replete with evidence supporting the State's theory that Lloyd knowingly placed Shawn in a position to receive these injuries. Circumstantial evidence alone may support a conviction. *Hughes*, 508 N.E.2d at 1296. The evidence was sufficient to support Lloyd's conviction.

█ Lloyd next argues that the State should have been required to bring its claim under the homicide statutes. However, Lloyd failed to raise this issue at trial, and has therefore waived the issue on appeal. He makes no allegation of fundamental error. Absent a showing of fundamental error, a party may not raise an issue on appeal when that issue was not raised at trial. *Pedrick v. State*, 593 N.E.2d 1213, 1220 (Ind.Ct.App. 1992), *reh'g denied.*

█ Lloyd next challenges the effectiveness of his trial counsel. In order to prevail with an ineffective assistance of counsel claim, Lloyd must show (1) that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment, and (2) that counsel's deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); and *Lawrence v. State*, 464 N.E.2d 1291, 1294 (Ind.1984). Isolated poor strategy, inexperience or bad tactics do not necessarily amount to ineffective assis-

tance of counsel. *Mott v. State*, 547 N.E.2d 261 (Ind.1980). A strong presumption exists that trial counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions. This presumption is overcome only by a showing of strong and convincing evidence. *Terry v. State*, 465 N.E.2d 1085, 1089 (Ind. 1984).

Lloyd first complains that his trial counsel was ineffective for failing to request a jury instruction "requiring the exclusion of every reasonable hypothesis of innocence when the evidence is purely circumstantial." We agree that when a case rests entirely on circumstantial evidence that a defendant is entitled to such an instruction. *See Nichols v. State*, 591 N.E.2d 134 (Ind.1992). However, contrary to Lloyd's contentions, we do not agree that this case is based wholly on circumstantial evidence. "In cases based solely on circumstantial evidence, there are generally no witnesses to the alleged crime." *Id.* at 136. Usually, this refers to eyewitnesses. In this case, Shawna testified about having heard Lloyd spank Shawn. Her testimony was specific enough to indicate that she could distinguish between beatings in which Lloyd used his hand and those in which Lloyd used a belt. Furthermore, while Shawna heard the beating, she also heard Lloyd yell at the baby and heard the baby cry. In at least one instance, Lloyd was the only one in the room with the baby when this was taking place. Although Shawna did not see the beatings, she sensed the beatings adequately enough to be considered a witness to the abuse. Additionally, there was an eyewitness to the abuse. Lloyd himself twice confessed to behavior which could have caused the injuries to Shawn. As described before, Lloyd first admitted to having knocked Shawn down the stairs. Later, he admitted to having stepped on the baby after the baby fell down the stairs. Although Lloyd claimed that these instances were accidents, his statements provide direct evidence that he injured the baby. Since this case is not based solely on circumstantial evidence, Lloyd was not entitled to such a jury instruction. Thus, his counsel was not ineffective for failing to request the instruction.

Lloyd next complains that his trial counsel failed to object to testimony that Lloyd spanked the victim and that he had various arguments and physical confrontations with Green. When an ineffective assistance of counsel claim is based on trial counsel's failure to make an objection, the appellant must show that a proper objection would have been sustained by the trial court. *Jones v. State*, 536 N.E.2d 267, 272 (Ind. 1989), *reh'g denied.* Lloyd's counsel was not ineffective for failing to object to testimony that Lloyd spanked Shawn. Such evidence was relevant, showing that Lloyd placed Shawn in a situation which endangered his life or health by allowing Shawn to receive injuries which caused serious bodily injury. Evidence is admissible if it has a tendency to prove or disprove a material fact, and is not otherwise excluded by an evidentiary rule. *Hansford v. State*, 490 N.E.2d 1083, 1089 (Ind.1986). Even if Lloyd could demonstrate that his attorney's failure to object to the testimony constituted error, he fails to demonstrate prejudice, thus failing the second prong of the *Strickland* test. In light of the substantial amount of unchallenged evidence supporting the conviction, we could not say with sufficient confidence that Lloyd was prejudiced by any of the alleged errors, or the cumulative effect of the alleged errors, to the extent that he was deprived of a reliable trial. *See Davis v. State*, 598 N.E.2d 1041, 1052 (Ind.1992), *cert. denied*, 510 U.S. 948, 114 S.Ct. 392, 126 L.Ed.2d 340 (1993); and *Shoulders v. State*, 578 N.E.2d 693, 698 (Ind. Ct.App.1991).

Finally Lloyd argues that his trial counsel refused to speak with him, and that trial counsel spent little time with Lloyd discussing his defense. He fails to demonstrate, however, what he could have communicated to his attorney that would have aided in his defense, had he and trial counsel achieved a greater level of communication. Such a claim unaccompanied by a demonstration of what the defendant would have provided in aid of his defense fails to establish a basis for relief. *Stewart v. State*, 567 N.E.2d 171, 173–74 (Ind.Ct.App.1991). Lloyd fails to demonstrate any harm resulting from trial counsel's alleged failure to communicate.

Because Lloyd was not prejudiced by any of the errors he asks us to assign, his cumulative prejudice cannot amount to ineffective assistance of counsel. *See Williams v. State,* 508 N.E.2d 1264, 1268 (Ind.1987).

Because he fails to raise reversible error, Lloyd's conviction and sentence are affirmed.

SHEPARD, C.J., and DeBRULER, DICKSON, and SULLIVAN, JJ., concur.