**Kenneth Jerome LLOYD, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 71A03–9805–PC–231.**

Court of Appeals of Indiana.

Oct. 14, 1999.

---

Kenneth J. Lloyd, Pendleton, Indiana, Appellant Pro Se.

Jeffrey A. Modisett, Attorney General of Indiana, Liisi Brien, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

MATTINGLY, Judge

The trial court summarily denied Kenneth Jerome Lloyd's Petition for Post–Conviction Relief. He appeals, asserting that the trial court erred by not holding an evidentiary hearing. We affirm.

## FACTS AND PROCEDURAL HISTORY

Lloyd was convicted, after a jury trial, of neglect of a dependent, a Class B felony. We adopt our supreme court's recitation of facts from Lloyd's direct appeal in *Lloyd v. State*, 669 N.E.2d 980, 981–83 (Ind.1996).

Angela Green resided in South Bend, Indiana with her four children, Shawna, Steven, Shane, and eighteen-month[-]old Shawn. In December of 1992, Angela Green met the defendant, Kenneth Lloyd. That same month, on Christmas Eve, Green and Lloyd began cohabitating [sic] at Green's residence. Lloyd immediately assumed a role in the household disciplining the infant Shawn.

On January 11, 1993, Green's eldest daughter, Shawna, then age eleven, informed Green that Shawna had seen a "whep" on Shawn's leg. At trial, Shawna defined for the trial court the meaning of "whep:" "a mark that looked like a sore." Later that month, Green herself noticed similar injuries on her children's legs. She told Lloyd to "stop whupping the kids this hard." Annoyed at Green's comments, Lloyd argued with Green. After Lloyd and Green took their disagreement to another room, Shawna discovered a large hole in the wall of the room in which Lloyd and Green had been arguing.

In March of 1993 Lloyd assumed the task of toilet training Shawn. Lloyd warned the infant that he would punish him with a belt if he failed to use the bathroom. Shawna reported that she heard Lloyd hit Shawn with a belt and warn Shawn to stop soiling himself.

Additional evidence suggests that Shawn was suffering from abuse. On March 26, 1993, the owner of the day care center at which Lloyd usually dropped off Shawn, Steven, and Shane noticed that Shawn was absent from day care. The owner expressed her concern to Green; Green advised the owner that Lloyd was toilet training Shawn. Shawn never returned to day care. Four-year-old Steven later reported to the day care owner that Shawn had bruises on his head and a black eye. The owner of the day care center confronted Lloyd about these injuries when he later dropped off Steven and Shane for day care. Lloyd denied that Shawn had such severe injuries.

A few days before April 11, 1993, Shawna heard Shawn "falling from somewhere" inside the house. Investigating, she found Lloyd, Green, and Shawn in a bedroom. When she inquired about Shawn's swollen head, Green and Lloyd told Shawna that Shawn had fallen down the stairs.

On the morning of April 12, 1993, Lloyd and Shawna dropped off Steven and Shane at day care, Shawna advising the owner that Shawn was not coming. Shawn soiled himself again that morning. Green's sister, who lived in a basement apartment below Green, heard Shawn crying at about 9:30 a.m. When Shawn stopped crying, Green's sister went to sleep. A little over an hour later, Lloyd woke Green's sister, asking for her help, claiming Shawn was choking.

Green's sister discovered Shawn's body lying on a bed upstairs, "real cold and just limp." She immediately sought emergency help. Emergency personnel

arrived, attempted resuscitation, and then transported Shawn's body to the hospital, where Dr. Joseph Lee continued resuscitation attempts for an additional hour, to no avail. Dr. Lee's examination of Shawn's body revealed a body temperature of 91.4 degrees, suggesting that Shawn had been dead for at least two hours. Emergency medical personnel, as well as Dr. Lee, noted numerous injuries on Shawn's body, injuries inconsistent with Lloyd's story that Shawn had choked on food.

South Bend police officer Brian Young arrived at Green's home immediately after the emergency medical personnel. Lloyd identified himself with the pseudonym "Dwayne Proctor" and told Officer Young that Shawn began choking after eating grits or a sandwich, and that, after attempting CPR for fifteen to twenty minutes, Lloyd summoned Green's sister. Lloyd claimed to be unaware of anything else that could be wrong with Shawn. South Bend Police Officer Steve Noonan then transported Lloyd to the emergency room. Lloyd continued to identify himself as Dwayne Proctor, and told Officer Noonan that he gave Shawn a sandwich, and then left the room for about twenty minutes to make a phone call. Lloyd told Officer Noonan that Shawn bruised his eye and nose two weeks earlier when Shawn fell down some stairs.

At the emergency room, Lloyd presented yet a third variation on his description of the events of the morning. Lloyd told Dr. Lee that he had been feeding oatmeal to Shawn, that Shawn choked on the oatmeal, and that Lloyd administered CPR to Shawn when he realized that Shawn was not breathing. Lloyd explained to Dr. Lee that Shawn's bruises were the result of his falling down two weeks earlier.

That afternoon, after waiving his Miranda rights, Lloyd gave a statement to police. He explained that he returned home that morning, changed Shawn's pants, made a sandwich and gave part of the sandwich to Shawn. He claimed to have then answered the telephone and that ten to fifteen seconds later he returned and found Shawn on the bedroom floor. Advised that his story was inconsistent with Shawn's injuries, Lloyd then claimed that Shawn had fallen down both outside and inside the house that morning. Additionally, Lloyd stated that he had accidentally knocked Shawn down a stairway inside the house.

Shawn's autopsy revealed bruises to Shawn's forehead, temple, cheeks, abdomen, forearm, chin, back, groin, and buttocks. Except for some of the bruises on Shawn's head, all of these bruises were less than three to five days old. The doctor performing the autopsy determined that the forehead bruises were consistent with a blow with knuckles. The abdominal bruises were consistent with a squeeze requiring "a considerable amount of force." The autopsy revealed that internal bleeding caused Shawn's death. Specifically, Shawn's small bowel had been completely ripped in two, causing his abdomen to fill with blood. An initial injury, which occurred five to fourteen days prior to Shawn's death, when Shawn's abdomen was squeezed with marked force, forced his bowel against his backbone and caused his bowel to split. The doctor performing the autopsy testified that this injury, unusual because it was in a relatively protected area of the body, would cause extreme pain. A second injury to the bowel, which may have occurred spontaneously, or may have been the result of multiple repetitive bouts of trauma, severed the bowel sections entirely, initiating the bleeding which resulted in Shawn's death.

Lloyd again waived his Miranda rights and gave a second statement to police. Confronted with the results of the autopsy, Lloyd explained that he had failed to mention in his earlier statement that

"I accidentally stepped on the baby after he fell down the stairs."

(Citations to the Record omitted.)

On direct appeal, Lloyd asserted that the evidence at trial was insufficient to support his conviction; that the State should have been required to bring his case under the homicide statutes; and that his trial counsel was ineffective by (1) failing to request a jury instruction "requiring the exclusion of every reasonable hypothesis of innocence when the evidence is purely circumstantial," *Lloyd,* 669 N.E.2d at 985; (2) failing to object to evidence that Lloyd spanked Shawn; and (3) failing to properly communicate with Lloyd during trial. Our supreme court found that Lloyd's claimed errors were not reversible errors and affirmed his conviction and sentence.

Lloyd then filed a Petition for Post–Conviction Relief, presenting four allegations of error:

1. During final argument, the State committed prosecutorial misconduct and violated Lloyd's due process rights when the prosecutor referred to Lloyd as "having beaten the child to death";

2. Though Lloyd was charged with and found guilty of neglect of a dependent, there was a material variance between the charging information and the evidence adduced at trial, in that the information alleged that Lloyd allowed injuries to happen to the deceased, while the evidence produced at trial was that Lloyd caused the injuries to the deceased;

3. Lloyd's trial counsel was ineffective because counsel: (a) failed to object during cross-examination of witnesses to testimony concerning bruising on the deceased; (b) failed to seek a limiting instruction and/or an admonition of the jury to restrict the use of testimony by the coroner; (c) opened the door to testimony by Lloyd as to whether Lloyd ever struck or punched the deceased; (d) failed to invoke the "Common Law Doctrine of Completeness" (R. at 14) as to introduction of part of Lloyd's videotaped statements to detectives; and (e) failed to object to the prosecution's statement during final argument that Lloyd had "beaten the child to death"; and

4. His appellate counsel was ineffective because she: (a) failed to raise the above issues during Lloyd's direct appeal; (b) failed to obtain a complete transcript of the trial proceedings; and (c) failed to allege ineffective assistance of trial counsel due to trial counsel's actions in questioning Lloyd about whether he ever struck the deceased.

In its detailed and comprehensive Findings and Order, the post-conviction court found that Lloyd had:

failed to adduce any argument which, if taken as true, would have produced a different result in the trial and/or established ineffective trial counsel. Since [Lloyd's] claims of ineffective appellate counsel rest on his allegations of ineffective trial counsel, his Petition is equally unavailing with respect to ineffective appellate counsel.

(R. at 44–45.) As a result, the post-conviction court denied, without a hearing, Lloyd's Petition for Post–Conviction Relief.

**DISCUSSION AND DECISION**

■ A post-conviction court may summarily deny a petition for relief if the pleadings and the record conclusively demonstrate that there is no genuine issue of material fact and the petitioner is not entitled to relief. Ind. Post–Conviction Rule 1(4)(f); *see also Clayton v. State,* 673 N.E.2d 783, 785 (Ind.Ct.App.1996) ("The necessity of an evidentiary hearing is avoided when the pleadings show only issues of law."). Where the post-conviction court is able to determine, after reading the petition and consulting the record, that there is no factual issue in dispute, a summary denial of a petition for post-conviction relief is proper. *Sheckles v. State,* 684 N.E.2d 201, 203–04 (Ind.Ct.App.1997), *trans. denied.*

### 1. *Prosecutorial Misconduct*

▮ Lloyd claims that the State's reference to Lloyd having beaten the child to death amounted to prosecutorial misconduct, as it "simply and plainly imflammes [sic] the passions of the jury and asks of them not only to convict for reasons other than guilt, but to convict Lloyd of a charge he was not and has never been charged with." (R. at 16.) As noted by the post-conviction court:

> [s]ince the jury heard evidence that [Lloyd] hit the child with a belt and with his hands, and heard other evidence of injuries that were consistent with blows delivered to the child, and that the child's death was caused by some of these traumatic injuries, the jury could have reasonably inferred that [Lloyd], indeed, beat the child to death.

(R. at 39–40.) As the State's comment that Lloyd had beaten the child to death was borne out by the evidence presented, it gives rise to no issue of material fact which would have afforded Lloyd a hearing on this issue.

### 2. *Variance Between Charge and Evidence at Trial*

▮ Lloyd argues that

> while the charging information alleges that [Lloyd] 'allowed' injuries to happen to the deceased, proof aduced [sic] at trial concurred that Lloyd 'caused' the injuries to the deceased.... The proof at trial allowed for an inference to be placed before the jury and for the resulting conviction to be gained from that inference without Lloyd being charged with a charge consistent with the proof brought out at trial.

(R. at 17.) However, as noted by the post-conviction court, "the charging language itself generally tracked the statutory language; it claims that [Lloyd] did 'knowingly place Sean [sic] Woods in a situation that endangered his life or health by allowing Sean [sic] Woods ... to receive injuries.'" (R. at 39.) We agree with the post-conviction court that "[i]t is Sophistic logic to claim that there is a material difference between *giving a person an injury* by hitting him and *allowing a person to receive an injury* by hitting him." *Id.* (emphasis in original.) We find Lloyd's claim raises no issue of material fact which would have afforded him a hearing on this claim.

### 3. *Ineffective Assistance of Counsel*

▮ Lloyd claims that the ineffective assistance of both his trial and appellate counsel creates genuine issues of material fact which require he be given an evidentiary hearing. Generally, effective representation of counsel is a mixed question of fact and law. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Van Cleave,* 674 N.E.2d 1293, 1296 (Ind.1996). As such, the granting of summary judgment without any evidentiary hearing is unusual. An evidentiary hearing is typically required to develop all of the facts relevant to the claim, as an ineffective assistance of counsel claim revolves around the unique facts of that case and many of those facts may exist outside of the record. *See Sherwood v. State,* 453 N.E.2d 187, 189 (Ind. 1983). However, if all of the facts alleged by the defendant are taken as true, then an evidentiary hearing may not be necessary. *See, e.g., Hough v. State,* 690 N.E.2d 267, 272–73 (Ind.1997), *reh'g denied, cert. denied,* —— U.S. ——, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998). *See also* 24 C.J.S. *Criminal Law* § 1633(b) (While a post-conviction petitioner is not ordinarily entitled as a matter of right to an evidentiary hearing, courts are encouraged, and ordinarily required, to hold such hearings when the petition alleges ineffective assistance of counsel; however, an evidentiary hearing is not required when it is clear the allegations are baseless or meritless.).

### A.  Ineffectiveness of Trial Counsel [1]

#### 1.  Failure to Properly Cross–Examine Witnesses

Lloyd claims that his trial counsel failed to properly cross-examine certain witnesses, who allegedly would have testified that they saw no bruises on Shawn the day he was taken to the hospital. Even if true, i.e., they would have testified that they did not see any bruises, there was other evidence of bruising, including medical testimony. Lloyd has failed to create a factual issue here which would afford him a post-conviction hearing.

#### 2.  Failure to Obtain Limiting Instruction

Lloyd claims that his trial counsel was ineffective by failing to request a limiting instruction to restrict the use of the coroner's testimony. He claims that the coroner's testimony went far beyond that which was needed to prove neglect, and so he was "prejudiced by the homicidal references and inferences." (R. at 14.)

A trial court has inherent discretionary power in deciding whether to admit evidence, and its decisions are reviewed only for abuse of that discretion. *Myers v. State*, 617 N.E.2d 553, 558 (Ind. Ct.App.1993). Our supreme court noted in *Strong v. State*, 538 N.E.2d 924, 931 (Ind. 1989) that when dealing with expert testimony, it is generally up to the trier of fact to either accept or reject the opinion of the expert witness:

> The finder of fact is entitled to weigh and determine the credibility to be accorded the expert's opinion based on the evidence presented, including the extent of the witness's experience and expertise, the reliability of the analytical methods employed, and the degree of certitude with which the opinion is cast.

(quoting *Noblesville Casting Div. of TRW v. Prince*, 438 N.E.2d 722, 729 (Ind.1982)).

As a result, even had Lloyd's counsel been able to obtain a limiting instruction, Lloyd's assertion of error does not convince us that the jury would have reached an opposite result. Lloyd has failed to convince us that this creates an issue of material fact.

#### 3.  Opening the Door

Lloyd claims his attorney improperly "opened the door," in questioning Lloyd as to whether he had ever struck or punched Shawn, to testimony which led to an inference that Lloyd "caused" the bruising and other injuries. Even if true, as noted by the post-conviction court, there was sufficient evidence presented by other witnesses that Lloyd physically abused Shawn. This does not create an issue of material fact.

#### 4.  Failure to Introduce Entire Statement

Lloyd asserts that his trial counsel's failure to introduce the entire statement which Lloyd gave to the police constituted ineffective assistance of counsel. Specifically, Lloyd claims that the portions of the statement which were not introduced into evidence demonstrated that he had tried life-saving techniques on Shawn. Lloyd also claims that his counsel failed to introduce into evidence a towel which allegedly contained vomit and part of a sandwich Shawn threw up.

Even taking these assertions as true, there was overwhelming evidence of Lloyd's abuse of Shawn. As noted by our supreme court,

> Lloyd himself twice confessed to behavior which could have caused the injuries to Shawn.... Lloyd first admitted to having knocked Shawn down the stairs. Later, he admitted to having stepped on the baby after the baby fell down the stairs. Although Lloyd claimed that these instances were accidents, his state-

---

**1.** On his direct appeal, Lloyd alleged his trial counsel was ineffective for three reasons not raised in his post-conviction petition. Our supreme court determined that Lloyd had not shown trial counsel was ineffective on any of those grounds. *Lloyd,* 669 N.E.2d at 985.

ments provide direct evidence that he injured the baby.

*Lloyd,* 669 N.E.2d at 985.   Lloyd was not entitled to an evidentiary hearing on this issue, as there is no material issue of fact.

### 5.  *Failure to Object During Final Argument*

■  Lloyd asserts that his trial counsel was ineffective in failing to object to the State's characterization that Lloyd had "beaten the child to death."   As noted by our supreme court on Lloyd's direct appeal, "the jury could reasonably conclude that Lloyd abused Shawn in a manner which caused Shawn to die of a severed bowel."   *Id.* at 984.   We cannot say the prosecutor mischaracterized that evidence; Lloyd thus fails to present a material issue of fact which would afford him a hearing.

### B.  *Ineffectiveness of Appellate Counsel*

Lloyd asserts that his appellate counsel was ineffective, primarily because she failed to raise the above issues.   However, as Lloyd has failed to present material issues of fact as to his trial counsel's ineffectiveness, he cannot present any material issues of fact as to his appellate counsel's failure to raise those same issues on appeal.

Lloyd raises one allegation not addressed above, that appellate counsel failed to obtain a transcript of the closing arguments.   That allegation does not create an issue of material fact.   Lloyd presented evidence in his Petition for Post–Conviction Relief as to the contents of the State's comments during final argument, so that there was sufficient information for the post-conviction court to review.

The post-conviction court's denial of Lloyd's request for an evidentiary hearing is affirmed.

SHARPNACK, C.J., and BAKER, J., concur.