**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**DAVID T. PAGE**
Pittman & Page
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

FILED

Aug 11 2014, 10:33 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONALD WOODS, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1310-PC-858 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Grant W. Hawkins, Judge
The Honorable Christina Klineman, Commissioner
Cause No. 49G05-0703-FA-45266

**August 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**CRONE, Judge**

**Case Summary**

Donald Woods appeals the denial of his petition for postconviction relief. In his petition, he maintains that he was denied his constitutional right to effective assistance of counsel based on his attorney's alleged in-court failure to develop defenses, call certain experts, and conduct thorough cross-examination as well as his alleged out-of-court failure to investigate crime scenes. Finding that he failed to establish that he was prejudiced by any of his alleged errors, we affirm.

**Facts and Procedural History**

The facts as summarized in an unpublished memorandum decision on Woods's direct appeal and adopted in the postconviction court's findings of fact are as follows:

> At approximately 3:00 a.m. on March 18, 2007, Jose Raines was home alone and asleep on his couch when a loud noise awakened him. He looked up to find Donald Woods standing over him. After the two men exchanged words, Woods pulled a gun out of his pocket, pointed it at Raines, and threatened to kill him. Woods asked Raines about money and property, including a Playstation and some DVDs. During this exchange, Raines grabbed for the gun. As the two men struggled, the gun discharged. The bullet went past Raines' head and embedded in the wall behind him. Raines "felt the gunpowder and everything else." As the struggle continued, the magazine fell out of the gun. Raines managed to push Woods out the back door of his apartment. Once outside, Woods continued to cock the gun back and forth as if it were jammed.

> Police officers arrived in response to a 911 call. When they were in front of Raines' residence, they heard the distinct sound of a gun being cocked at the rear of the house. They saw Woods around the corner of the house. The officers told Woods to stop and drop his gun. Woods ran toward his residence, and the officers followed. Woods entered his house, placed a second magazine in the gun, opened the front glass storm door, and shot at one of the officers. The officer heard the bullet go by his head and returned fire. The officer's shot hit Woods. The officers arrested Woods after he exited the house and doubled up on the front porch, injured from the officer's shot.

2

The State charged Woods with two counts of attempted murder, a Class A felony; one count of attempted robbery, a Class B felony; one count of burglary, a Class B felony; one count of resisting law enforcement, a Class D felony; and one count of carrying a handgun without a license, a Class A misdemeanor. The jury found Woods guilty of all the charges.

*Woods v. State*, No. 49A04-0904-CR-192 (Ind. Ct. App. Apr. 16, 2010) (footnotes and internal citations omitted).

Woods appealed, challenging the sufficiency of evidence to support his conviction for the attempted murder of Raines. Another panel of this Court affirmed. Woods subsequently filed a petition for postconviction relief, claiming that his trial counsel ("Counsel") provided ineffective assistance by (1) failing to develop his self-defense claim; (2) failing to impeach certain State witnesses; and (3) failing to investigate crime scenes and challenge certain physical evidence.[1] The evidence presented at the hearing consisted of exhibits (trial transcripts and depositions) as well as testimony from Counsel and lengthy testimony from Woods's expert, Professor Frances Watson, director of the wrongful conviction clinic at the Indiana University Robert H. McKinney School of Law. The postconviction court denied his petition, and he now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

Woods contends that the postconviction court erred in denying his petition for postconviction relief. The petitioner in a postconviction proceeding "bears the burden of establishing grounds for relief by a preponderance of the evidence." Ind. Postconviction

---

[1] In his memorandum in support of his postconviction petition, Woods also alleged ineffective assistance of appellate counsel. The postconviction court concluded that he waived this claim by failing to raise it in his petition. Ind. Postconviction Rule 1(3)(b). This appeal concerns only Woods's trial counsel.

Rule 1(5); *Passwater v. State*, 989 N.E.2d 766, 770 (Ind. 2013). When issuing its decision to grant or deny relief, the postconviction court must make findings of fact and conclusions of law. Ind. Postconviction Rule 1(6). A petitioner who appeals the denial of his postconviction petition faces a rigorous standard of review. *Massey v. State*, 955 N.E.2d 247, 253 (Ind. 2011). In conducting our review, we neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id.* "A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Passwater*, 989 N.E.2d at 770 (citation and quotation marks omitted). In other words, if a postconviction petitioner was denied relief in the proceedings below, he must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite the one reached by the postconviction court. *Massey*, 955 N.E.2d at 253.

**Section 1.0 – Ineffective Assistance of Counsel – Standard of Review**

Woods maintains that he was denied his constitutional right to effective assistance of counsel. To prevail on an ineffective assistance claim, he must satisfy two components; he must demonstrate both deficient performance and prejudice resulting from it. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Deficient performance is "representation [that] fell below an objective standard of reasonableness, [where] counsel made errors so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Passwater*, 989 N.E.2d at 770. We assess counsel's performance based on facts that are known at the time and not through hindsight. *Shanabarger v. State*, 846 N.E.2d 702, 709 (Ind. Ct. App.

4

2006), *trans. denied*. Evidence of isolated poor strategy, inexperience, or bad tactics will not support an ineffective assistance claim; instead, we evaluate counsel's performance as a whole. *Flanders v. State*, 955 N.E.2d 732, 739 (Ind. Ct. App. 2011), *trans. denied* (2012). "[C]ounsel's performance is presumed effective, and a defendant must offer strong and convincing evidence to overcome this presumption." *Ritchie v. State*, 875 N.E.2d 706, 714 (Ind. 2007). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Hinesley v. State*, 999 N.E.2d 975, 983 (Ind. Ct. App. 2013) (citation omitted), *trans. denied* (2014).

Prejudice occurs when a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different. *Passwater*, 989 N.E.2d at 770. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Mitchell v. State*, 946 N.E.2d 640, 643 (Ind. Ct. App. 2011), *trans. denied*. "Although the performance prong and the prejudice prong are separate inquiries, failure to satisfy either prong will cause the claim to fail." *Baer v. State*, 942 N.E.2d 80, 91 (Ind. 2011).

The postconviction court issued extensive findings of fact, which read in pertinent part,[2]

> 6. Although Woods was initially represented by the Marion County Public Defender's Office, Woods ultimately hired private counsel, [Counsel], who represented him for the last four months of the pre-trial period, as well as throughout the jury trial and sentencing. The Petitioner confines his ineffective assistance of counsel claim to the representation provided by Counsel before and during the trial. The court notes that much of the discovery conducted on behalf of

---

[2] Throughout the findings, the postconviction court referred to Woods's counsel by name. We refer to him as Counsel.

petitioner, including all the pre-trial depositions, was done by the public defender's office. All such discovery was provided to Counsel. Counsel's pre-trial representation included taking a second sworn statement of Officer Anderson and of Officer Vanek; filing defense witness lists on January 8, 2009, and February 23, 2009; arguing in opposition to the State's 404(b) evidence (that Woods stole the gun, which he possessed during the alleged crimes, from Eric Dodson) during a hearing on the same.

Throughout the jury trial, Counsel participated in voir dire including voicing appropriate challenges for cause; present[ed] an opening statement; cross-examined each of the State's eleven witnesses in its case-in-chief and both of the State's rebuttal witnesses; presented testimony from two witnesses for the defense who each claimed that they were eyewitnesses to portions of the altercation with Raines and the police, each maintaining that the [sic] Woods' behavior was contrary to that testified to by State's witnesses[;] presented evidence from Woods himself; voiced pertinent objections during trial; tendered a proposed jury instruction for D-felony criminal recklessness and made argument in support thereof regarding the attempted murder count involving Jose Raines; tendered a proposed jury instruction regarding impeachment and made argument in support thereof; successfully presented argument in support of the court giving a self-defense instruction as to the attempted murder count involving Jose Raines; asked the court to reconsider its refusal to instruct the jury as to criminal recklessness and made additional argument; presented a closing argument for the defense; [and] polled the jury as to their verdict.

Following the trial Counsel did significant work in preparation for sentencing. His effectiveness in the sentencing hearing, and his preparation therefore, are not in question.

7. Counsel has been an attorney for sixteen years. He has practiced throughout Indiana and has represented clients in a variety of cases including a substantial amount of criminal defense work. He estimates having handled one hundred fifty to two hundred major felony criminal cases. Counsel believes that he had tried approximately ten major felony jury trials as lead counsel prior to representing Woods and had tried another ten or so as co-counsel.

…. Counsel obtained Woods' file from deputy public defender

Kathie Perry within a few days of being hired, and after reviewing said file Counsel spoke with Ms. Perry and with [another deputy public defender] about the case. In addition, Counsel went out in the neighborhood and spoke with potential witnesses. Counsel testified that his preparation also included examining all of the State's discovery, evidence, and exhibits; having numerous converastions [sic] with his client; conducting legal research; preparing jury instructions; and preparing for trial. Counsel believes that he did examine Woods' body for scars from wounds as well as Woods' medical records; he did not photograph Woods' body or conduct additional interviews of his treating doctors.

Counsel did not petition to view the crime scene in Raines' house himself, although he reviewed the State's evidence thoroughly. The court recognizes that Counsel did not enter his appearance as counsel in this case until October 17, 2008, nearly 19 months after the case was filed. Counsel did not see a need to employ an expert regarding blood patterns and could not recall if he interviewed crime scene specialist Veronica Livers prior to trial.

Counsel reviewed all of the State's ballistics reports and did not see anything that could be accomplished by having an independent ballistics expert examine the evidence. Counsel no longer recalls if there were two different opinions from the State's experts regarding a connection of the firearms evidence to his client's gun, but he would have reviewed any firearms experts' reports discovered by the State. Counsel did not believe that there was any chance that he could get that .45 caliber shell casing excluded from the evidence.

Counsel identified the "keys to the case" as self-defense, witness credibility and physical evidence. Counsel testified that his theory of the case was guided by his client's version of the events which was corroborated by testimony of the neighbor across the street as well as by Woods' uncle. His theme regarding the charging involving the officer was that an unarmed and pointing Woods was shot by police who then tried to cover up that Woods was unarmed (i.e. witness credibility and lack of physical evidence). Counsel's theme regarding the charges against Raines was a struggle that resulted when Raines grabbed the gun and also self-defense based again upon his client's version of the events which also asserted that Raines was the one who then shot at and tried to kill Woods. Counsel felt that the best evidence regarding self-defense was to let his client tell his truthful testimony about what

occurred and also to cross-examine Raines and challenge his credibility.

When asked about the prior incident in which Raines was alleged to have brandished a gun, followed by a police search of Raines' house in response to a call from Woods, Counsel testified that he was aware of this incident before trial and did plan to elicit testimony about it to show his client's fear of Raines and also to show a motive that Raines had to be angry with Woods. Counsel was not aware of the actual police report prior to trial though and did not plan to use it as documentary evidence. Counsel does not recall specifically but believes that if he did not object to the State's motion in limine regarding prior bad acts, then he did not believe that said motion applied to this evidence regarding Raines' possession of a firearm on previous date. When asked if he ultimately acquiesced to not presenting evidence about Raines' prior brandishing of a gun, Counsel strongly disagreed. Counsel's recollection is that he repeatedly pursued the issue and fought the point for his client.

8.    Frances Watson is a clinical professor of law and co-director of clinical programs at Indiana University's Robert H. McKinney School of Law in Indianapolis. She directs the wrongful conviction clinic in which law students represent clients on "wrongful conviction" postconviction relief cases and on any related appeals. In the past, Ms. Watson worked with the criminal defense clinic in which law students represent defendants at the trial level, and she coached the trial team for more than ten years. She been involved with teaching at the law school for over twenty years and has been licensed to practice law since 1980. Ms. Watson has also worked in a public defender-type capacity, has tried over thirty jury trials, and was the first Chief Public Defender in Marion County, serving from 1993 to 1995. Early on in that position she had direct supervisory responsibility over all major felony public defenders.

Ms. Watson volunteered her time regarding her preparation and testimony for Woods' postconviction relief action. She was asked by Woods' PCR counsel to be a witness regarding the performance of the trial lawyer. In preparation, she read the four-volume trial transcript. In Ms. Watson's opinion, Counsel was ineffective and would have been given an "F" in trial practice. Ms. Watson specifically asserts that Counsel failed to adequately argue self-defense, failed to obtain a ballistics expert and suppress ballistics evidence and failed to properly cross-examine witnesses. (Petitioner, by counsel, argued additional

alleged deficiencies.)

9. The Court was not provided a copy of the police report from January 2007 discussed at great length in the trial. The Court was not provided records of an independent medical examination of petitioner nor was the court given evidence of any kind outside the original discovery, other than through testimony of Professor Watson. The Court was not provided copies of taped statements taken by Counsel. The Court was not provided with any independent expert testimony on any singular issue related to physical evidence (i.e. no ballistics expert, no blood spatter expert, etc.).

10. Three witnesses testified on behalf of the defense during the Jury Trial, each bolstering Woods' claim of self defense and/or his claims that he did not fire a weapon at Officer Vanek. The jury's verdict indicates the testimony was rejected.

11. The evidence is for the State and against the Petitioner.

Appellant's App. at 48-53 (footnotes and internal citations omitted).

## Section 1.1 – Self-Defense Claim

Woods maintains that Counsel was ineffective in presenting his claim of self-defense with respect to the attempted murder of Raines. The postconviction court concluded that Counsel performed deficiently for failing to adequately develop the defense but that Woods was not prejudiced as a result. At the postconviction hearing, Counsel testified that he had intended to develop self-defense by using evidence that Raines had brandished a weapon in front of Woods in a previous incident. The problem stems from the source of this evidence, a police report which was the subject of the State's pretrial motion in limine to which Counsel had agreed. The trial court had granted the motion in limine based on Indiana Evidence Rules 609, 403, and 404(b). Nonetheless, Counsel addressed the incident in opening statement, and when the trial court sustained an objection by the State, a bench conference

was held outside the jury's presence and Counsel was prohibited from further addressing the contents of the report.

At the postconviction hearing, Professor Watson testified that it was apparent that Counsel "did not understand that he had agreed to limine out the facts relative to character evidence, relative to his self-defense theory and it's clear he didn't understand what he'd done or how it would impact … his opening statement." PCR Tr. at 103. Whether owing to ignorance or the confusion of the moment, from that point on, Counsel did not explicitly develop the defense. During direct examination of Woods, Counsel elicited some testimony indicating that Woods had acted in self-defense during his confrontation with Raines, but neither the questions nor the responses were stated in those terms.[3] Likewise, during his summation, Counsel referenced Woods's fear of Raines, stating that Woods "saw the look in Jose Raines's eyes when he whipped that gun out and aimed it at his head," "was so sure that Jose Raines was going to shoot him in the head," and was "running out there and he's thinking he's going to get shot any minute in the back." Tr. at 1096. Counsel also sought and was granted a detailed self-defense jury instruction that comprised two pages of the

---

[3] The facts underlying Woods's self-defense claim are unclear. The postconviction court concluded that Woods's self-defense theory was that he had seen Raines carrying a gun months earlier, that he feared that Raines might retaliate against him for entering his house and demanding cash and property, and that he therefore brought a gun when he entered Raines's house. Appellant's App. at 55. We agree that this was likely Counsel's strategy, but we also note Woods's trial testimony that Raines also had a gun that night and that Raines had been sitting on the gun on the couch when he was confronted by Woods. Tr. at 986. Woods was unable to explain why Raines attempted to wrestle Woods's gun away rather than simply using his own gun. *Id*. at 986-87. At the postconviction hearing, Professor Watson testified that she did not think that Counsel had a consistent theory regarding self-defense and that to the extent he had a theory, he had abandoned it by the conclusion of the trial. PCR Tr. at 108, 111.

record. Appellant's Dir. Appeal App. at 186-87.[4]

We agree with the postconviction court that Counsel performed deficiently concerning Woods's self-defense claim, especially pertaining to his handling of the pretrial motion in limine. Likewise, we agree that the basic facts underlying Woods's self-defense claim (that Raines had previously possessed a gun and/or had a gun on the couch with him when Woods entered and confronted him) were placed before the jury—albeit inartfully—through testimony, closing argument, and the jury instruction. The jury heard this evidence and could evaluate it alongside the overwhelming physical and testimonial evidence of his guilt. We therefore conclude that there is not a reasonable probability that the outcome of his trial would have been different absent Counsel's deficient performance. As such, Woods failed to demonstrate prejudice under *Strickland*.

### Section 1.2 – Cross-Examination/Impeachment of Witnesses

Woods also alleges as deficient Counsel's cross-examination/impeachment of certain State witnesses. "The nature and extent of cross-examination is a matter of trial strategy, delegated to trial counsel." *Bivins v. State*, 735 N.E.2d 1116, 1133 (Ind. 2000) (citation omitted). "We will not lightly speculate as to what may or may not have been an advantageous trial strategy, as counsel should be given deference in choosing a trial strategy that, at the time and under the circumstances, seems best." *Perry v. State*, 904 N.E.2d 302,

---

[4] We note that Woods was fortunate that the trial court allowed the jury instruction to be given, since Woods was not in a place where he had the right to be (having broken into Raines's house) and he instigated the violence by bringing a firearm and pointing it at Raines. *See Bryant v. State*, 984 N.E.2d 240, 250 (Ind. Ct. App. 2013) (to prevail on self-defense claim, "defendant must present evidence that he … was in a place he had a right to be … did not provoke, instigate, or participate willingly in the violence … and … had a reasonable fear of death or great bodily harm"), *trans. denied*.

308 (Ind. Ct. App. 2009), *trans. denied*. "The method of impeaching witnesses is a tactical decision and a matter of trial strategy that does not amount to ineffective assistance." *Woodson v. State*, 961 N.E.2d 1035, 1042 (Ind. Ct. App. 2012) (citation omitted), *trans. denied*.

Here, Woods cites Counsel's cross-examination and efforts to impeach two police officers with prior inconsistent statements, characterizing Counsel's questions as "compound, convoluted and confusing." Appellant's Br. at 19. At the postconviction hearing, Professor Watson described Counsel's cross examination as "just horrid," stating that "he didn't understand how to ask a simple question," asked "rambling" questions, did not know the difference between impeaching and refreshing recollection, and "just doesn't have th[e] skill set [to impeach using a deposition]." PCR Tr. at 114-15, 119-20.

Counsel failed to impeach Officer Vanek concerning minor discrepancies between his pretrial and trial testimony about his vantage point when he first arrived outside Raines's home and reported hearing the noise of a gun being cocked. Counsel cross-examined Officer Vanek regarding the exact number of shots fired by Woods at the second crime scene and attempted to impeach him concerning the difference between "at least two" and "more than two." Tr. at 217, 220, 229. He also attempted to impeach Officer Vanek concerning his exact position at the second crime scene relative to Officer Anderson and to Woods's house. Moreover, the inconsistency between the two officers' testimony concerned whether Officer Anderson returned fire "immediately" or "within a few seconds" after Woods fired. *Id*. at 216, 302-03.

While we agree with Professor Watson that Counsel's questions were often inartful and compound, we conclude that the inconsistencies did not implicate *whether* Woods shot at the officers but rather the number of shots that he fired as well as Officer Anderson's response. Additionally, we note that during his summation, Counsel discussed the various inconsistencies in the officers' testimony. In short, Counsel's failure to fully highlight the cited testimonial inconsistencies was accompanied by overwhelming physical and testimonial evidence of Woods's guilt. Woods has failed to establish clear error by the postconviction court in determining that he was not prejudiced by Counsel's deficiencies in cross-examining/impeaching the State's witnesses.

### Section 1.3 – Physical Evidence

Woods also alleges that Counsel made several mistakes or omissions vis-à-vis physical evidence. In this vein, he claims that Counsel failed to investigate the two crime scenes, failed to object to the ballistics evidence, and failed to call experts to testify concerning the ballistics and blood evidence.

### Section 1.31 – Pretrial Investigation

Woods submits that Counsel was ineffective in failing to investigate or photograph the crime scenes and in failing to introduce evidence collected there. Indisputably, effective representation requires adequate pretrial investigation and preparation; however, it is also well settled that we may not use hindsight in judging counsel's performance. *Badelle v. State*, 754 N.E.2d 510, 538 (Ind. Ct. App. 2001), *trans. denied*. This means that we must employ a great deal of deference to counsel's judgments with respect to pretrial

investigations. *Boesch v. State*, 778 N.E.2d 1276, 1283 (Ind. 2002). "[E]stablishing failure to investigate as a ground for ineffective assistance of counsel requires going beyond the trial record to show what investigation, if undertaken, would have produced." *Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998), *cert. denied* (1999).

The trial court found that Counsel did not perform deficiently in this respect. We agree. Although Woods cites evidence of bullet holes, a porch light, and a bloody kitchen floor that purportedly should have been investigated, we note that he initially was represented by a public defender and that Counsel was not hired until nineteen months later. Counsel testified that when he was hired, he met with both predecessor deputy public defenders and that they discussed the case "pretty extensively [and] covered all the bases." PCR Tr. at 12. He further reported that he conducted depositions, went out into the neighborhood, spoke with lots of witnesses, conferred with Woods multiple times, examined the State's evidence (including medical records), conducted legal research, formulated theories of the case, and prepared jury instructions. He explained that although he did not petition the trial court for permission to conduct a formal investigation of the crime scenes, he visited Raines's home and looked around outside and looked around inside Woods's home during several informal visits. Moreover, in terms of a formal forensic investigation, the remoteness between the offenses and any such investigation would impact the investigator's ability to collect probative physical evidence.[5] Simply put, Woods has failed to establish what relevant

---

[5] For example, blood on the kitchen floor would be difficult if not impossible to detect nineteen months after the incident. Also, a bullet-pierced glass pane presumably would have been repaired and porch light bulbs changed in the interim.

14

exculpatory evidence so late an investigation would have produced. As a result, he has failed to establish that the court clearly erred in determining that Counsel did not perform deficiently with respect to crime scene investigation.

**Section 1.32 – Ballistics Report and Expert Witnesses**

Woods also claims that Counsel was ineffective based on his failure to object to the ballistics report (or file a motion to suppress it) or to object to the State's expert testimony concerning ballistics. To prove ineffective assistance based on counsel's failure to object, a petitioner must prove that an objection would have been sustained if made and that he was prejudiced by the failure. *Kubsch v. State*, 934 N.E.2d 1138, 1150 (Ind. 2010). *See also Helton v. State*, 907 N.E.2d 1020, 1024 (Ind. 2009) (petitioner failed to show reasonable probability that he would have prevailed at trial had counsel filed motion to suppress, meaning that trial court would have granted it and State's other evidence would have been otherwise insufficient to support conviction). "[A] decision regarding what witnesses to call is a matter of trial strategy which an appellate court will not second-guess." *Curtis v. State*, 905 N.E.2d 410, 415 (Ind. Ct. App. 2009) (citation omitted), *trans. denied*.

With respect to the ballistics evidence, Professor Watson testified that Counsel should have objected when the State's ballistics expert characterized the shell casing as a "match" with Woods's weapon, opining that the term is an overstatement and that the preferred phraseology is "consistent with." PCR Tr. at 126-29, 132. Not only did Counsel not object to the term "match" during trial, but he also used the term at the postconviction hearing, testifying that "the .45 caliber cartridge shell that was found outside was problematic because

15

it matched the caliber of the handgun that belonged to – was in the possession of Donald Woods that night." *Id*. at 30. With respect to his decision not to call an expert to refute the report and testimony, Counsel stated,

> I did not see anything there that I thought would help the defense in terms of – if what you're getting at is, you know, did I hire an independent ballistics expert to examine anything, I did not and that was based on the fact that I … didn't see anything that leapt out at me as being important to inform me that I should do so.

*Id*.

In reviewing Counsel's postconviction hearing testimony concerning ballistics, we see a lengthy line of questioning concerning alleged inconsistencies between the State's experts, apparently to show that Counsel should have objected or called his own witnesses. However, as a whole, Counsel's responses concerning the ballistics evidence indicate that his approach was strategic, based on his not wanting to draw attention to the caliber match by raising an objection. The record is devoid of evidence that the State's ballistics evidence was subject to fabrication or tampering. Instead, the evidence simply was unfavorable to Woods's case, showing with respect to the second crime scene (1) that a .45 caliber shell casing was discovered in a place consistent with the officers' testimony that Woods fired at them; (2) police found a .45 caliber Glock stashed partially under a bed in Woods's home; and (3) that the officers were carrying .40 caliber firearms. Woods has failed to demonstrate that any objection would have been sustained or that any additional expert would have offered probative evidence to cast doubt on the ballistics evidence. Consequently, he has failed to establish clear error by the postconviction court in its concluding that Counsel did

16

not perform deficiently with respect to the ballistics evidence.

Additionally, Woods complains that Counsel should have done more to call the jury's attention to his injuries, that is, Counsel should have taken photographs or called an expert to testify concerning them. The fact that Woods was injured during his confrontation with police was placed before the jury multiple times during the three-day trial. He has failed to demonstrate that photographs or expert commentary on the physical appearance of those injuries would be anything other than cumulative. As such, Counsel did not perform deficiently in this respect. We find no clear error here.

Woods makes a similar argument with respect to blood spatter evidence, claiming that Counsel was ineffective in not calling an expert witness to testify. Again, Woods did not offer any exhibits or testimony from ballistics or blood evidence experts during the postconviction hearing in an effort to establish the exculpatory effect of such expert testimony. We find no clear error by the postconviction court in concluding that Counsel did not perform deficiently with respect to blood spatter evidence or any other physical evidence.

**Section 1.4 – Cumulative Effect**

Finally, Woods maintains that the cumulative effect of Counsel's alleged errors amounts to ineffective assistance. Errors by counsel that are not individually sufficient to establish ineffective representation may add up to ineffective assistance when viewed cumulatively. *Pennycuff v. State*, 745 N.E.2d 804, 816-17 (Ind. 2001). *Cf. Lloyd v. State*, 669 N.E.2d 980, 985 (Ind. 1996) (court refused to find cumulative prejudice where defendant was not prejudiced by any of the individually assigned errors). Here, the postconviction

17

court concluded that Woods failed to prove deficient performance with respect to Counsel's investigation of crime scenes and treatment of ballistics and blood evidence. As such, the only errors (deficiencies in performance) to be considered for cumulative effect are Counsel's failure to develop Woods's self-defense claim and Counsel's inartful impeachment of State witnesses. As stated, the self-defense claim was placed before the jury, albeit weakly, and the inconsistencies in the officers' testimony did not call into doubt Woods's act of shooting at them. In the words of Woods's own expert Professor Watson, the State's case against him was "strong." PCR Tr. at 135. Based on the foregoing, we conclude that the two instances of deficient performance, even considered cumulatively, do not amount to prejudice. Thus, Woods has failed to establish clear error in the postconviction court's denial of his petition. Accordingly, we affirm.

Affirmed.

BAKER, J., and BARNES, J., concur.